In re D.H. OVERMYER TELECASTING CO., INC., Debtor.

HADAR LEASING INTERNATIONAL CO., INC., et al., Plaintiffs,

v.

D.H. OVERMYER TELECASTING CO., INC., et al., Defendants.

D.H. OVERMYER TELECASTING CO., INC., et al., Plaintiffs,

v.

CITICOM BROADCASTING OF OHIO, INC., et al., Defendants.

D.H. OVERMYER TELECASTING CO., INC., Plaintiff,

v.

Arthur M. GILMAN, Esquire, et al., Defendants.

Arthur M. DORFNER, Plaintiff,

v.

D.H. OVERMYER TELECASTING CO., INC., Defendant,

and

Daniel H. Overmyer, et al., Third Party Defendant.

Bankruptcy No. B81–00506.
Adv. Nos. B81–1005, B82–1085, B81–0794 and B81–0257.

United States Bankruptcy Court, N.D. Ohio, E.D.

April 30, 1983.

John Silas Hopkins, III, and William S. Eggeling, Ropes & Gray, Boston, Mass., and Susan B. Collins, Baker & Hostetler, Washington, D.C., for First Nat. Bank of Boston.

James M. Wilsman and Kevin T. Duffy, Parks, Eisele, Bates & Wilsman, Cleveland, Ohio, for debtor.

Morton S. Robson, New York City, pro se and for Hadar Leasing Intern. Co., Inc. and Citicom Broadcasting of Ohio.

## MEMORANDUM OF OPINION

JOHN F. RAY, Jr., Bankruptcy Judge.

This matter came before the Court on the motion of D.H. Overmyer Telecasting Co., Inc. ("Telecasting") and the First National Bank of Boston ("FNBB") for an order striking the appearances pro haec vice of Morton S. Robson, Esquire, the evidence and briefs of counsel.

*Findings of Fact*

1. Morton S. Robson is an attorney at law licensed to practice in the State of New York.

2. Mr. Robson is not admitted to the bar of the United States District Court for the Northern District of Ohio. (2 Tr. 146)[1]

3. Mr. Robson represented Telecasting during settlement negotiations between Telecasting and Hadar Leasing International Co., Inc. ("Hadar"), Intermodal Systems Leasing, Inc. ("ISLI") and General Electric Corporation. (2 Tr. 163–65) The settlement, reached June 19, 1979, was found by this Court to be a fraud on Telecasting, Telecasting's creditors and the Bankruptcy Court for the Southern District of New York. *In re D.H. Overmyer Telecasting Co., Inc.,* 23 B.R. 823, 882–883 (Bkrtcy.N.D. Ohio 1982). These findings have been designated by Mr. Robson as part of the appeal he filed on behalf of ISLI, and Mr. Robson states he will argue an appeal that the findings do not support the judgment in favor of Telecasting. (2 Tr. 177–78)

4. Mr. Robson represents Wilkinson Storage Corporation, Standard Warehouse Company, Inc., Southwest Warehouse Company, Inc., Servicenter, Inc., R.T. Realty Corp., Overmyer Canada Limited, Overmyer AG, AGG Projects, Inc., Overmodal Terminals, Merchants & Manufacturers Warehouse, Inc., Intermodal Terminals, Inc., Freight Delivery Service, D.H. Overmyer Company Quebec Limited, D.H. Overmyer Company of Canada Limited, Deauville Private Rental Homes, Inc., Weathervane Farms, Inc., Expediter Warehouse Company, Omega Executive Services, Inc., Jeebs Distribution Services, Inc., Barbara Overmyer Strang, Trustee, Howard C. Cook, Trustee, National Distribution Services, Inc., National Distribution Services of California, Inc., Peerless Manufacturing Corporation and Clark Telecasting, Inc. in a mandamus petition attacking the Court's judgment in *In re D.H. Overmyer Telecasting Co., Inc.,* 23 B.R. 823 (Bkrtcy.N.D.Ohio 1982). (2 Tr. 179–186)

1. All references to the transcript herein are to the transcript of *D.H. Overmyer Telecasting Co., Inc. vs. Arthur M. Gilman, Esquire,* et al., adversary proceeding B81–0794, unless otherwise indicated.

5. Mr. Robson also represents and has represented D.H. Overmyer Company, Inc., debtor-in-possession, ("DHO") and The Overmyer Company, Inc., debtor-in-possession, ("TOC"). (3 Tr. 263, 275) Mr. Robson never sought nor received permission under Bankruptcy Rule 215(b).

6. Mr. Robson represents and has represented Daniel H. Overmyer personally. (2 Tr. 148) It is Mr. Overmyer who ultimately directs counsel, and who has promised payment to Mr. Robson. (3 Tr. 270)

7. It is in the interests of D.H. Overmyer, debtor-in-possession, to uphold the findings of this Court rendered in *In re D.H. Overmyer Telecasting Co., Inc.,* 23 B.R. 823 (Bkrtcy.N.D.Ohio 1982). (3 Tr. 265)

8. Mr. Robson is presently counsel for Citicom Broadcasting of Ohio, Inc. ("Citicom") in this Court. (3 Tr. 279)

9. Mr. Robson is also the owner of 17½ percent of Citicom. (3 Tr. 279)

10. Citicom presently has an application before the Federal Communications Commission ("FCC") for a mutually exclusive construction permit. (FNBB Ex. 507)

11. If Citicom is granted the mutually exclusive construction permit, Telecasting will not be able to renew its FCC broadcast license.

12. Telecasting's broadcast license is the principal asset, if not the only asset of real value that it has. (3 Tr. 282)

13. It is the opinion of the general counsel for TOC that the stock of Telecasting is essential to the rehabilitation of TOC and the success of its plan of arrangement. (FNBB Ex. 505) Even Mr. Robson admits that if Citicom is successful in obtaining a construction permit, with the result that Telecasting does not obtain a renewal of its license, the TOC reorganization will be hampered. (3 Tr. 284)

### Discussion

■ The right to appear pro haec vice for an attorney not generally admitted to practice before a court is a privilege, not a right. There is no constitutional right either for an attorney to practice in a court to which he is not admitted generally, or for a litigant to be represented by such an attorney. *Leis v. Flynt,* 439 U.S. 438, 441–442, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979). The Fourth Circuit has stated "It is well settled that permission to a nonresident attorney, who has not been admitted to practice in a court, to appear pro haec vice in a case there pending is not a right but a privilege, the granting of which is a matter of grace resting in the sound discretion of the presiding judge." *Thomas v. Cassidy,* 249 F.2d 91, 92 (4th Cir.1957), *cert. denied,* 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958). The Court has the ability and obligation to refuse the privilege of pro haec vice practice of counsel who fail to meet ethical standards. In *Ross v. Reda,* 510 F.2d 1172 (6th Cir.1975), *cert. denied,* 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975), the Sixth Circuit upheld the exclusion of William Kunstler from representing a defendant in an Ohio State criminal trial, because Mr. Kunstler refused to agree to abide by the Disciplinary Rules and Ethical Considerations applicable to trial publicity. In *State v. Kavanaugh,* 52 N.J. 7, 243 A.2d 225 (1968), the Court affirmed the exclusion of counsel pro haec vice based on an actual instance of violation of standards regarding trial publicity.

■ In the present case, it is clear to this Court that Mr. Robson has numerous conflicts of interest that violate the Ohio Code of Professional Responsibility. Disciplinary Rule 5–101(A) states that:

> Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

Mr. Robson is a 17.5 percent owner of Citicom, and has appeared in this Court pro haec vice on behalf of Citicom, himself and the other owners, directors and officers of Citicom. Mr. Robson also has been special counsel for TOC in its Chapter XI proceed-

ing in the Southern District of New York since 1976, and still represents TOC in litigation against FNBB. The stock of Telecasting, encumbered by a lien in favor of FNBB, is one of the major assets of TOC, and is very important to its hopeful plan of reorganization. *See* Finding of Fact No. 12. However, Mr. Robson is presently trying, through Citicom, to take Telecasting's broadcast license, which is the most valuable asset, if not the only real asset, Telecasting has. Mr. Robson, therefore, has conflict of interest between Citicom, his ownership interests in Citicom and his representation of TOC.

Mr. Robson's purported oral agreement with Mr. Overmyer that he will withdraw the Citicom application, if it should appear that Mr. Overmyer and TOC, rather than FNBB, would get the license, does not resolve the conflict. This oral agreement is still contrary to the potential interest of TOC creditors (if there is a surplus over the amount due to FNBB), the interest of Bellerophan, Inc., a nominee of FNBB that became the equity owner of TOC by judgment of this Court (Judgment ¶ 14, FNBB Ex. 497, p. 13), and ignores the interests of his client, Citicom, and its other owners.

Mr. Robson also fails to realize that it is not Mr. Overmyer's consent that is necessary to obviate any conflict of interest. TOC is a Chapter XI debtor in New York, and Mr. Robson is special counsel for the Chapter XI *estate.* Bankruptcy Rule 215(a) requires conflicts to be disclosed to and ruled on by the Bankruptcy Court. *See e.g., In re Arlan's Department Stores, Inc.,* 462 F.Supp. 1255, 1265 (S.D.N.Y.1978), aff'd 615 F.2d 925 (2nd Cir.1979). The nature and extent of Mr. Robson's conflict has been neither disclosed to nor approved by the Bankruptcy Court for the Southern District of New York.

Mr. Robson's ownership interest in Citicom also violates Disciplinary Rule 5–103(A). This rule states that:

A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

(1) Acquire a lien granted by law to secure his fee or expenses.

(2) Contract with a client for a reasonable contingent fee in a civil case.

The subject matter of litigation Mr. Robson was involved in was the reorganization of TOC. As explained above, Citicom's interests are directly related and adverse to the TOC reorganization and Mr. Overmyer himself. The taking of a proprietary interest in a litigation matter in which one represents a client is unseemly and likely to bring the bar into disrepute, and cannot be consented to by the client. Mr. Robson's ownership interest in Citicom is thus a violation of DR 5–103(A).

Mr. Robson also has a conflict of interest stemming from his representation of DHO. In the judgment of the Hadar adversary proceeding, this Court awarded the stock of 14 Overmyer companies to FNBB on the ground that they had been conveyed from DHO to TOC, to Mr. Overmyer and to a Bermuda trust in 1973, to hinder, delay and defraud FNBB (Judgment, ¶¶ 15, 20, FNBB Ex. 497, pp. 13, 14; Finding 12.1). It is the position of counsel for the DHO creditors' committee and counsel for the DHO custodial receiver that, based on this Court's findings, the stock of those 14 companies should go to DHO rather than FNBB. (5 Tr. 533, 534–35) Mr. Robson commenced a mandamus action in the Sixth Circuit Court of Appeals, and has entered an appearance on an appeal seeking to have those 14 companies, as well as others too numerous to mention, returned to the control of Mr. Overmyer. Mr. Robson's interest on behalf of Overmyer and his other companies preclude him from supporting the findings of fact on behalf of DHO, which he also purports to represent. It is precisely this type of conflict that the Code of Professional Responsibility was designed to obviate. Mr. Robson cannot adequately represent both interests at once.

Mr. Robson has at least one other conflict that he has violated. Mr. Robson represented Telecasting in litigation brought by General Electric Company during the time Telecasting was in Chapter XI in the Southern

District of New York. This Court made the finding that this settlement was a fraud on Telecasting, Telecasting's creditors and the Bankruptcy Court for the Southern District of New York. This fraud was part of the basis for the Court's award of punitive damages in favor of Telecasting and FNBB. Mr. Robson has appealed the Court's findings on behalf of Mr. Overmyer, DHO and ISLI. Mr. Robson is thus representing Telecasting's opposition in a case that involves the same matter on which he previously represented Telecasting.

This conflict alone is enough to justify Mr. Robson's disqualification before this Court, and enjoining him from rendering any legal services on behalf of Hadar, ISLI or any other Overmyer interest. In *Cord v. Smith,* 338 F.2d 516 (9th Cir.1964), Mr. Smith sued Mr. Cord for breach of an alleged oral contract made 30 years earlier. Mr. Smith's attorney, Mr. Young, claimed during a deposition that he had acted on behalf of Mr. Cord in making the alleged contract. Mr. Cord first unsuccessfully filed a motion to disqualify Mr. Young, and then filed an appeal. Mr. Young subsequently withdrew his appearance in the trial court, and agreed that the appeal was moot. The Court of Appeals held that the matter was not moot because Mr. Cord was challenging not only Mr. Young's right to appear as counsel of record, but also his right to render any legal services whatsoever to Mr. Smith in connection with the alleged contract. The Court held that Mr. Young was disqualified from rendering any legal services to Mr. Smith with regard to the case, and that the trial court was under a clear duty to prevent him from doing so.

In rejecting Mr. Young's argument that he was not acting as an attorney when he allegedly made the contract on behalf of Mr. Cord, the Court stated:

> ... The Canons that require that a lawyer who has represented a client in a transaction may not thereafter represent the other party to the transaction, in an action against his client based upon the transaction, are not to be so readily avoided. (*United States v. Trafficante,* 5

Cir., 1964, 328 F.2d 117) We think that the courts are not only entitled, but required, to hold the lawyer to his sworn allegations, made at a time when it was to his interest to claim that his actions for his client were done by him in his capacity of attorney for the client.

> It does not make any difference that the particular transaction is one which could have been handled on the client's behalf by a layman, i.e., one in which his activity is not necessarily the practice of law. Lawyers customarily render both legal and non-legal services, without distinction, and bill their clients for those services on the basis that all of them are legal services. Clients repose special confidence in, and retain their lawyers because they are lawyers. They are entitled to expect that their lawyers will act as they are supposed to act, without quibble as to what particular services may have been technically legal services. (See *In re Soale,* 1916, 31 Cal.App. 144, 153, 159 P. 1065, 1069)

*Id.* at 523–524. The Court further stated that:

> ... When an attorney appears before a federal court, he is acting as an officer of that court, and it is that court which must judge his conduct.

> In our opinion, the rule that an attorney who has represented one party in a transaction may not thereafter represent the other party in an action against his former client, arising out of or closely relating to the transaction, does not depend for its operation upon a subsidiary decision as to whether the attorney would or might be using or misusing confidential information derived from his former client. We think that the famous words of Judge Cardozo in *Meinhard v. Salmon,* 1928, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1, in which he was defining the duties of a trustee, are equally applicable to an attorney-at-law in relation to his conduct in the federal courts: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to some-

thing stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exxceptions. * * * Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd."

*Id.* at 524–525.

Mr. Robson represented Telecasting, ISLI and Hadar during the settlement with General Electric Company. Mr. Robson has more recently filed a notice of appeal and designation of issues on appeal on behalf of ISLI, which appeal the Court's findings about the General Electric settlement in favor of Telecasting. Under the principles of *Cord v. Smith, supra,* Mr. Robson cannot now represent any of the parties which now seek to uphold the validity of the General Electric settlement, including Mr. Overmyer. As in *Cord v. Smith, supra,* this prohibition of representation not only prohibits his appearance in these adversary proceedings, but restricts him from rendering any legal services whatsoever in connection with the Hadar appeals.

### Conclusions of Law

1. Mr. Robson's ownership interest in Citicom is an unresolvable conflict of interest which has contributed to his violating Disciplinary Rule 5–101(A) of the Ohio Code of Professional Responsibility.

2. Mr. Robson's ownership interest in Citicom represents a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, which has caused him to violate Disciplinary Rule 5–103(A) of the Ohio Code of Professional Responsibility.

3. Mr. Robson's representation of DHO and Mr. Overmyer on the appeals in this Court is an unapproved conflict of interest.

4. Mr. Robson's representation of TOC and Mr. Overmyer is an unresolved conflict of interest.

5. This Court has the authority and jurisdiction to prohibit Mr. Robson's appearance pro haec vice on behalf of Daniel H. Overmyer, DHO, Hadar, ISLI or any other Overmyer entity, in matters before this Court arising out of the Hadar adversary proceeding along with the appeal of the Court's decision.

6. Mr. Robson's representation of Telecasting in litigation brought by the General Electric Company requires him to be disqualified from representing Daniel H. Overmyer, DHO, Hadar, ISLI or any other Overmyer entity in these proceedings.

7. Mr. Robson's numerous conflicts of interest and his apparent insensitivity to them have caused this Court to conclude that he may not appear pro haec vice in any of these proceedings.