KRUPANSKY, Circuit Judge.
 

 Attorney Morton S. Robson appealed from the district court order which affirmed the decision of the bankruptcy court that struck the
 
 pro hac vice
 
 appearances of Robson in several adversary proceedings then pending in the bankruptcy court and further enjoined Robson from performing any additional legal services in connection with
 
 In re D.H. Overmeyer Telecasting Co., Inc.,
 
 23 B.R. 823 (Bankr.N.D.Ohio 1982) (“Hadar Adversary Proceedings”). The record revealed the following circumstances which gave rise to the instant appeal.
 

 Robson was licensed as an attorney in New York but was not admitted to the United States District Court for the Northern District of Ohio. Robson’s appearances before the northern district of Ohio bankruptcy court were on a
 
 pro hac vice
 
 basis.
 

 On November 16, 1982, D.H. Overmyer Telecasting Co., Inc. (“Telecasting”), a debtor in possession under Chapter 11 of the Bankruptcy Code and an appellee herein, filed motions with the bankruptcy court to strike Robson’s
 
 pro hac vice
 
 appearances in several adversary proceedings. The First National Bank of Boston (“FNBB”) filed a similar complaint.
 

 In their respective motions to strike, Telecasting and FNBB alleged that Robson had violated bankruptcy court orders and failed to make disclosures required by Bankruptcy Rule 215(B), and that Robson’s representation of various parties constituted conflicts of interest.
 

 In ruling on the above allegations, the bankruptcy court succinctly set forth the complex factual situation which gave rise to the motions to strike by FNBB and Telecasting. These facts need not be recounted in detail here.
 
 See, In re D.H. Overmyer Telecasting Co., Inc.,
 
 29 B.R. 647 (Bankr.N.D.Ohio 1983). Suffice it to say that the bankruptcy court concluded that Robson had “numerous conflicts of interest that violated the Ohio Code of Professional Responsibility,” including Disciplinary Rule S-lOliA),
 
 [1]
 
 as well as Bankruptcy
 
 *33
 
 Rule 215(a), which requires conflicts to be disclosed and ruled on by the bankruptcy court. 29 B.R. at 649-650. Specifically, the bankruptcy court determined that Robson’s appearance on behalf of Citicom, a company in which Robson owned 17.5 percent of the stock, directly conflicted with Robson’s representation of The Overmyer Company (“TOC”) in Chapter 11 proceedings in the southern district of New York and in litigation by TOC against FNBB.
 
 [2]
 
 The court also found a conflict of interest in Robson’s representation of the D.H. Overmyer Co., Inc. (“DHO”),
 
 see
 
 29 B.R. at 650, and evidence of fraud in a settlement which Robson had negotiated between Telecasting, General Electric Company, and several other corporations. 29 B.R. at 650-651. In an unpublished order, the district court affirmed the bankruptcy court’s decision.
 

 The bankruptcy court has both statutory and inherent authority to deny Robson the privilege of practicing before it. Rule 2.08 of the local civil rules for the northern district of Ohio, applicable to bankruptcy court pursuant to L.Civ.R. 1.01, governs and admission of attorney
 
 pro hac vice.
 
 Rule 2.08 provides:
 

 Permission to Participate in a Particular Case:
 

 Any member in good standing of the Bar of any court of the United States or of the highest court of any state who is eligible for admission to the bar of this District
 
 may
 
 be permitted to appear and participate in a particular case.
 

 (emphasis added).
 

 As is clear from the above-cited language, the decision to permit an out-of-state attorney to practice in the bankruptcy or district court for the northern district of Ohio is committed to the sound discretion of the trial judge. Rule 2.08 represents the codification of the inherent authority of the court to regulate the practice of law before it, as recognized by the United States Supreme Court over 150 years ago. In affirming the one-year suspension of an attorney by the district and circuit courts of the District of Columbia, the Court observed:
 

 On the one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court.
 

 Ex parte Burr,
 
 22 U.S. (9 Wheat.) 529, 6 L.Ed. 152 (1824).
 

 The
 
 Burr
 
 opinion further cautioned that a reviewing court should not interpose its authority to overturn a lower court’s decision to discipline an attorney absent a showing that the conduct of the court below “was irregular, or was flagrantly improper.” 22 U.S. at 531.
 

 In a more recent decision, the Supreme Court specifically rejected an argument that due process and equal protection principles apply to practice
 
 pro hac vice.
 
 In
 
 Leis v. Flynt,
 
 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979) (per curiam), the Court held that an attorney’s interest in appear
 
 *34
 
 ing
 
 pro hac vice
 
 did not constitute a liberty or property right under the Constitution, thus implicitly affirming its holding in
 
 Burr
 
 that a court has the inherent authority to determine who shall be granted the privilege of appearing before it.
 

 And finally, this circuit and others have upheld a lower court’s denial of
 
 pro hac vice
 
 status when some evidence of ethical violations was present.
 
 See, e.g., Ross v. Reda,
 
 510 F.2d 1172 (6th Cir.1975) (per curiam) (trial court properly rejected criminal defense attorney’s
 
 pro hac vice
 
 application where attorney refused to limit out-of-court statements about case in potential violations of four Ohio disciplinary rules and canons of ethics).
 
 See also, Hull v. Celanese Corp.,
 
 513 F.2d 568 (2d Cir.1979) (disqualification of law firm due to potential conflict of interest not abuse of discretion by lower court);
 
 Fred Weber, Inc. v. Shell Oil Co.,
 
 566 F.2d 602, 610 (8th Cir.1977) (court notes that trial judge had power to disqualify if representation by attorney constituted the mere “appearance of impropriety”);
 
 Thomas v. Cassidy,
 
 249 F.2d 91 (4th Cir.1957) (per curiam),
 
 cert. denied,
 
 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958) (permission to appear
 
 pro hac vice
 
 is privilege, granting of which is within sound discretion of presiding judge).
 

 In sum, the bankruptcy court is vested with the discretion to determine if
 
 pro hac vice
 
 status should be granted, or, as in this case, revoked. In the case at bar, a bankruptcy court, which was intimately familiar with the complex circumstances surrounding Robson’s representations of various clients, determined that several conflicts of interest existed. The court further noted Robson’s failure to comply with Bankruptcy Rule 215(a), which, as adopted by the Supreme Court, required disclosure of these conflicts to the court, as grounds upon which to exercise its discretion to revoke Robson’s
 
 pro hac vice
 
 status. The judge’s reasoning for his decision is supported by the record and in accordance with well-settled legal principles. There-fore, it simply cannot be deemed an abuse of discretion.
 

 One further matters requires attention. Robson argued that the bankruptcy court’s order enjoining him from further involvement in the Hadar adversary proceedings precluded him from appearing before the
 
 district
 
 court regarding those proceedings. Therefore, Robson urged, the bankruptcy court exceeded its authority in this respect. However, Robson admitted during oral argument that he had not filed a
 
 pro hac vice
 
 application with the district court in an effort to receive permission to appear in the Hadar appeal, and did not, in fact, know whether such an application would have been granted. Thus, this court is of the opinion that it was Robson’s own action in failing to apply to the district court, rather than the bankruptcy court’s order, that prevented him from appearing before the district court in the Hadar appeal.
 

 In view of the foregoing, the decision is affirmed.
 

 [1]
 

 . D.R. 5-101(A) provides:
 

 Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reason
 
 *33
 
 ably may be affected by his own financial, business, property or personal interests.
 

 [2]
 

 . The litigation between TOC and FNBB involves a dispute over the ownership of Telecasting’s stock, against which FNBB has an encumbered lien. The stock is the major asset of TOC, and is therefore critical to TOC’s Chapter 11 reorganization plan.
 

 The only basis for the value of Telecasting’s stock is its ownership of a broadcasting license. However, Citicom is presently trying, through Federal Communications Commission (FCC) procedures, to secure the license now held by Telecasting. Thus, if Citicom prevails in wrestling the license away from Telecasting, TOC’s potential for a successful Chapter 11 reorganization is indeed undermined. Since the license is of critical import to TOC and is also being sought by Citicom, the bankruptcy court was obviously correct in concluding that Robson’s representation of TOC conflicts with Robson’s ownership in TOC’s competition for the license, i.e. Citicom.