**In re Scott B. LUDWICK, Debtor.**

**Bankruptcy No. SG 95–80271.**

United States Bankruptcy Court,
W.D. Michigan,
Southern Division.

Aug. 11, 1995.

Office of the U.S. Trustee (Michael V. Maggio, argued and briefed), Grand Rapids, MI, advisor for Donald M. Robiner, U.S. Trustee for Michigan/Ohio Region IX.

Andrew D. Morgan (argued), Grand Rapids, MI, pro se.

Matthew Smith & Associates, P.C. (Matthew P. Smith, argued), Grand Rapids, MI, for debtor Scott B. Ludwick.

John A. Porter, Chapter 7 Trustee, Grand Rapids, MI, pro se.

Before LAURENCE E. HOWARD, Chief Judge and JAMES D. GREGG and JO ANN C. STEVENSON, Bankruptcy Judges.

*EN BANC* OPINION AND ORDER IMPOSING SANCTIONS AND SUSPENDING ANDREW D. MORGAN FROM THE PRACTICE OF LAW IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF MICHIGAN

JO ANN C. STEVENSON, Bankruptcy Judge:

## I.  Introduction

This matter comes before the Court upon the United States Trustee's March 13, 1995 Ex Parte Motion for an Order Directing the Debtor and Debtor's Counsel to Appear and Show Cause Why the Case Should Not be Dismissed and Why Sanctions Should Not be Imposed or Why the Court Should Not Grant Other Relief.[1] Based on the seriousness of the allegations raised against Attorney Morgan at the March 27, 1995 show cause hearing, the Honorable Jo Ann C. Stevenson determined that the hearing should be continued *en banc* to consider the possibility of suspending Attorney Morgan from practice before this Court. What follows are the factual and legal determinations reached after considering the testimony of witnesses and the exhibits offered during the March 27, 1995 hearing and the May 16, 1995 *en banc* hearing, adjourned to, and completed on July 10, 1995.

**1.** Judge Stevenson determined at a March 27, 1995 hearing that Debtor Scott B. Ludwick had done nothing dishonest in connection with the preparation of his petition and schedules. Based on this finding, she declined to dismiss his pending Chapter 7 case. This opinion deals solely with the U.S. Trustee's motion to show cause as

## II.  Jurisdiction

The U.S. Trustee's motion to show cause arises in a case referred to this Court by the Standing Order of Reference entered in this district on July 24, 1984 and is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Accordingly, this Court is authorized to enter a final judgment subject to the right of appeal provided by 28 U.S.C. § 158(a) and FED.R.BANKR.P. 8002. The following constitutes this Court's findings of fact and conclusions of law. FED.R.BANKR.P. 7052.

## III.  Facts

Attorney Morgan represented Debtor Scott Ludwick in the latter's Chapter 7 case. At the March hearing, Chapter 7 Trustee John Porter testified that in the course of preparing for Debtor Ludwick's 341 Meeting, he became suspicious of the validity of the signatures on Debtor Ludwick's petition.[2] At that time, he noticed that Debtor Ludwick's signature on his schedules differed markedly from the signatures appearing in several places on his petition (Transcript of March 27, 1995 hearing, p. 8). When questioned about this discrepancy at the 341 Meeting, Debtor Ludwick stated that he had never signed his petition.

On cross-examination of Trustee Porter, Attorney Morgan attempted to show that the reason Debtor Ludwick stated at the 341 Meeting that he had not signed his petition was due to his nervousness. This allegation was later refuted by Debtor Ludwick (Transcript of March 27, 1995 hearing, p. 26).

Following an off-the-record discussion between Assistant United States Trustee Michael V. Maggio, Trustee Porter, and Attorney Morgan, Trustee Porter testified that Attorney Morgan had continued to claim that the signature on the petition was indeed that of Debtor Ludwick. However, when Mr. Maggio reminded Attorney Morgan that it

it relates to the conduct of Andrew D. Morgan, Esq., Mr. Ludwick's counsel.

**2.** The 341 Meeting was held on February 22, 1995 in Grand Rapids, Michigan. Attorney Morgan, Trustee Porter, and Juanita Baker on behalf of Montgomery Ward, made appearances.

may be a federal crime to lie to him as a federal law enforcement officer, Attorney Morgan changed his story. His new story was that it was possible that either he or one of his employees had signed Debtor Ludwick's name to the petition because of the urgency of filing it, due to the fact that Debtor Ludwick was facing a garnishment. Attorney Morgan admitted off-the-record to Mr. Maggio and Trustee Porter that the signature was not in fact Debtor Ludwick's (Transcript of March 27, 1995 hearing, p. 20). He could not recall, however, whether he (Mr. Morgan) had been the party who had signed the petition.[3]

Despite Trustee Porter's testimony, Attorney Morgan still sought to elicit testimony as to Debtor Ludwick's alleged agitated state at the 341 Meeting. The Court inquired as to the relevance of this line of questioning, since Attorney Morgan had already admitted that he or someone in his office had signed the petition and not Debtor Ludwick. Attorney Morgan then claimed that he had never admitted that he or someone in his office had signed the petition but had only said that it was *possible* that that was what had happened. Mr. Maggio stated, and the Court agreed, that Attorney Morgan had unequivocally admitted that Debtor Ludwick had not signed his petition. Attorney Morgan seemed to concede as much in his closing statement.[4]

At the May 16, 1995 *en banc* hearing (May "*en banc* hearing") Attorney Morgan again attempted to retract his March 27, 1995 off-the-record admission to Messrs. Maggio and Porter that Debtor Ludwick had not signed his petition. Attorney Morgan instead testified that Debtor Ludwick may have signed the petition himself (Transcript of May 16, 1995 *en banc* hearing, p. 16). He explained that if someone in his office had forged Debtor Ludwick's name, it was because a note in the file indicated that Debtor Ludwick was facing an imminent garnishment, and the petition had to be filed immediately in order to prevent the garnishment from being entered.

Debtor Ludwick had testified at the March hearing, however, that he had never faced a garnishment. At the May *en banc* hearing, Debtor Ludwick added that Attorney Morgan should not have been in any hurry to file his petition since, although he had given Attorney Morgan the materials to file his petition at the beginning of November 1994, the petition was not filed until January 20, 1995. If Attorney Morgan were in a hurry to file the petition, it was not because Debtor Ludwick was facing a garnishment but because Debtor Ludwick had threatened to contact the Attorney Grievance Commission because of the unexplained filing delay.

### IV. Analysis

All three judges found Attorney Morgan to be an extremely unreliable witness and his explanation of events to be entirely unbelievable. This finding of incredibility is based upon Attorney Morgan's inconsistent, vague statements, illogical arguments and overall demeanor. Under FED.R.BANKR.P. 8013, "findings of fact, whether based on oral or documentary evidence, shall not be set aside

---

3. The Court found Attorney Morgan's complete inability to remember anything about the preparation and signing of Debtor Ludwick's petition astonishing, especially since at the time of the March hearing, the petition had been filed only two months earlier. Our review of Court records indicates that since the January 20, 1995 filing date of the Ludwick petition and the March hearing, Attorney Morgan prepared and filed very few petitions in the bankruptcy court for the Western District of Michigan. Federal Rule of Evidence 201 permits us to take judicial notice of our own court records. *State of Fla., etc. v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir.1975). The Court finds it even more difficult to believe that Attorney Morgan has such a poor recollection of the Ludwick petition and the circumstances surrounding its filing.

4. In his closing argument Attorney Morgan stated, "I'm still not absolutely sure as to what happened where and when in this process. But I think—I still think this is a rather unique case and has turned out rather tragically. He facing a garnishment. The date we filed the petition, he picked up the order and notice of stay to take to his payroll clerk. And I think someone at my office probably thought there was enough of an emergency to justify it. But I understand now and I'll be sure that everybody that ever works for me understands that that's never to be excused" (Transcript of March 27, 1995 hearing, p. 34).

unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness." See also, *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988) ("We do not have the authority to reevaluate the bankruptcy court's factual findings, especially where the credibility of the witness is involved, unless they are clearly erroneous."); *In re Casa Nova of Lansing, Inc.*, 146 B.R. 370 (Bankr. W.D.Mich.1992).

We find that the signature on the Ludwick petition was forged by Attorney Morgan. We reach this conclusion by simply comparing the authenticated Morgan signature (Exhibit 4) with the forged Ludwick signature (Exhibit 1).[5] Under FED.R.EVID. 901(b)(3), an expert opinion on handwriting is not necessary. Rather, the trier of fact can identify the origin of a forged signature by comparing it with an authenticated one.

The Court gave Attorney Morgan ample opportunity to explain the apparent forgery. He refused to admit that he had forged Debtor Ludwick's signature, however, and explained that if he in fact had done so, he did not remember. Attorney Morgan maintained that the forged Ludwick signature had three possible origins: Debtor Ludwick himself, Attorney Morgan's legal assistant, or Attorney Morgan. The Court will address in turn each explanation proffered.

Debtor Ludwick testified at the 341 Meeting, the March hearing, and the May *en banc* hearing that someone had forged his signature at three different places on his petition (Exhibit 1, pp. 2, 4, and 5). Debtor Ludwick acknowledged, however, that his true signature appears on Form 7 of his schedules

(Exhibit 1, p. 37). Even the most cursory of comparisons indicates that the signature acknowledged by Debtor Ludwick and the forged signatures were not signed by the same person. The Court found Debtor Ludwick to be completely credible and cannot imagine why he would falsely claim that his signature had been forged.

Nor did Attorney Morgan proffer any reason why Debtor Ludwick would lie about the forgeries. In fact, Trustee Porter testified at the March hearing that Attorney Morgan had admitted that Debtor Ludwick had not signed the petition (Transcript of March 27, 1995 hearing, p. 20). Attorney Morgan later disputed Trustee Porter's testimony at the May *en banc* hearing, however, claiming that he had only said that it was *possible* that Debtor Ludwick had not signed the petition. Although Mr. Maggio challenged Attorney Morgan's memory, he maintained that he had never admitted that Debtor Ludwick had not signed his petition. Regardless of what Attorney Morgan did or did not admit at the March hearing, the Court believes that Debtor Ludwick's signature was indeed forged at three different places on his petition. The Court found the testimony of Mr. Maggio and Trustee Porter to be entirely credible and believes them to be professionals of the highest integrity. Mr. Morgan's dispute as to what he did or did not admit off the record at the March hearing did much to damage his credibility before this Court.

At both the March and the May *en banc* hearings, Attorney Morgan testified that it was possible his legal assistant, Lillian Howell–Bell, had signed Debtor Ludwick's name to his petition.[6] According to Attorney Mor-

---

5. The authenticated signature was taken from Attorney Morgan's own bankruptcy petition and schedules (Exhibit 4). Attorney Morgan is no stranger to the bankruptcy process. In addition to appearing as debtor's counsel in over 130 bankruptcy cases in this district alone, Attorney Morgan filed Chapter 13 on August 11, *1994*. That case was dismissed on October 11, 1994 for failure to make payments, and the Order of Final Decree Closing Estate was entered on November 16, 1994. On October 31, 1994, Attorney Morgan filed Chapter 7. Although he received his Chapter 7 discharge on April 12, 1995, the Morgan bankruptcy remains open. We take judicial notice of these facts pursuant to FED.R.EVID. 201.

6. Because Attorney Morgan had testified at the March hearing that it was possible that Ms. Howell–Bell had signed Mr. Ludwick's name to his petition, Mr. Maggio subpoenaed Ms. Howell–Bell to appear at the May *en banc* hearing. Ms. Howell–Bell failed to appear, however, because according to Mr. Morgan, she was not feeling well. A question arose as to whether Ms. Howell–Bell had been properly served.

The service of a subpoena is controlled by FED.R.CIV.P. 45(b), which is incorporated by FED. R.BANKR.P. 9016. Personal service of subpoenas is required and interpretation of the word "delivering" with reference to the person to be served has been construed literally. 9A WRIGHT & MILLER,

gan, his office believed that Debtor Ludwick was facing a garnishment shortly before the petition was filed. In the rush to stop the garnishment, his office may have signed Debtor Ludwick's name to the petition. True to form, however, Attorney Morgan just could not remember for sure if "his office" had indeed signed Debtor Ludwick's name. Mr. Maggio's examination of Attorney Morgan on this point went as follows:

Q So, other than you and her (Ms. Howell–Bell), there is no one else who could have put the signatures on these documents.

A That's correct.

Q And she is in fact your employee.

A Yes.

Q And she is not here today in order to provide you with corroboration?

A That's correct.

Q So—And in fact you—do you deny that you signed your name to these documents or signed the signature to these documents?

A I'm unsure. If I did, I certainly don't recall it.

Q Okay. But if it wasn't you then it was her?

A I—I'm not sure frankly.

Q Who else could it have been?

A It seems a probability that if it weren't me it—it must have been her, that's correct.

Q Did you instruct her to sign these documents?

A No.

\* \* \* \* \* \*

Q Would she sign these documents on her own without a direct authority?

A I doubt it.

Q So would it be fair to assume that it wasn't her who did it?

A Well, I would like to assume it was neither of us.

Q Well, doesn't it have to be somebody?

A That's correct, it does.

FEDERAL PRACTICE AND PROCEDURE § 2453 (1995). Because Ms. Howell–Bell was not personally served, she was not properly served and was

Transcript of March 27, 1995 hearing, pp. 39–40.

According to Attorney Morgan's own testimony, it is very unlikely that Ms. Howell–Bell signed Debtor Ludwick's name to the petition. We agree. This fact, combined with Debtor Ludwick's testimony that he did not sign his petition, and the striking resemblance between the forged Ludwick signature and Attorney Morgan's admitted signature, leads us to conclude that Attorney Morgan forged Debtor Ludwick's signature.

Despite Attorney Morgan's almost uncanny inability to remember anything about the preparation and signing of the Ludwick petition, he urged the Court to consider the motive of the individual who had forged Ludwick's name when determining how to sanction the forgerer. We find this suggestion patently ridiculous in light of the fact that Attorney Morgan was unwilling to admit who had forged the signature, making it impossible to determine that individual's motive in doing so.

## V. The Motion to Reopen Proofs

Following the May en banc hearing but before an opinion was issued, the U.S. Trustee filed a Motion to Reopen Proofs. An En Banc Order granting that motion was signed on June 7, 1995, setting a hearing date for July 10, 1995 (the "July en banc hearing"). The U.S. Trustee filed his Amendment to the Original Motion to Show Cause Why Sanctions Should Not be Imposed Upon Andrew D. Morgan on July 6, 1995.

At the July en banc hearing, Mr. Maggio introduced evidence that Attorney Morgan had forged his client Mark VandeWetering's name to the motion to convert Debtor VandeWetering's Chapter 13 to Chapter 7. Over the objection of Attorney Morgan, the Court permitted Debtor VandeWetering to testify that although he had requested that Attorney Morgan convert his bankruptcy to a Chapter 7, Debtor VandeWetering never signed the motion to convert and was never informed that his case had in fact been con-

therefore not required to attend the May en banc hearing.

verted.[7] Despite never having signed the motion, Debtor VandeWetering found the motion to convert bearing his signature in his file (Exhibit 7). When asked, Debtor VandeWetering indicated that he "guessed" Attorney Morgan had forged his name to the motion to convert (Transcript of July 10, 1995 *en banc* hearing, p. 20).

The Court believes Debtor VandeWetering's testimony that he never signed his motion to convert. Attorney Morgan's failure to deny he forged VandeWetering's name, the similarity between Attorney Morgan's admitted signature and the forged VandeWetering signature, and our belief that Attorney Morgan forged Debtor Ludwick's signature on his petition, lead us to conclude that Attorney Morgan forged Debtor VandeWetering's signature as well.

Mr. Maggio also called Lillian Howell–Bell, Attorney Morgan's paralegal and sole employee, to testify at the July *en banc* hearing. Although subpoenaed to testify at the May *en banc* hearing, Ms. Howell–Bell failed to appear. See footnote 6, *supra*. Attorney Morgan had testified at the May *en banc* hearing that Ms. Howell–Bell may have been the individual who forged Debtor Ludwick's name to his petition. He further testified that, "[I] told her that she would probably be subpoenaed ... She was aware of the hearing. She told me she was seeing a doctor today about her stomach and was sick. Last I had thought she was going to be here" (Transcript of May 16, 1995 *en banc* hearing, p. 38). Although the Court expressed its suspicions about Ms. Howell–Bell's failure to respond to the subpoena, no formal action was taken due to the fact that the subpoena had been improperly served and the Court had no proof that she ever received it.

Ms. Howell–Bell testified at the July *en banc* hearing that she did not in fact receive the subpoena to appear. She did, however, find an envelope addressed to her from the U.S. Trustee in the Morgan law office trash receptacle the day after the hearing. The

envelope had been opened and its contents removed. Around the same time Ms. Howell–Bell discovered the envelope, she received a phone call from Gail Beach, the court reporter for the May *en banc* hearing, who was calling to verify the spelling of her name in order to produce a transcript. It was through talking with Ms. Beach that Ms. Howell–Bell learned about the May hearing for the first time.

After finding the envelope and speaking with Ms. Beach, Ms. Howell–Bell contacted Mr. Maggio at the U.S. Trustee's office and set up an appointment to speak with him on Friday, May 19, 1995. While meeting with Mr. Maggio, Attorney Morgan called her and told her to walk out immediately and get back to work because the matter had nothing to do with her (Transcript of July 10, 1995 *en banc* hearing, p. 39). Ms. Howell–Bell chose to finish her meeting with Mr. Maggio.

Ms. Howell–Bell testified at the July *en banc* hearing that contrary to Attorney Morgan's testimony, he never discussed the May *en banc* hearing with her or told her that she may be subpoenaed to appear. Also contrary to Attorney Morgan's testimony, she never told him that she was sick that day or that she had a doctor's appointment the afternoon of the May *en banc* hearing.

Since Attorney Morgan failed to explain why he did not tell the truth regarding Ms. Howell–Bell's knowledge of, or whereabouts during the May *en banc* hearing, the Court can only conclude that he was trying to hide something. We are extremely troubled by the fate of the subpoena sent to Ms. Howell–Bell. She testified that Attorney Morgan retrieved and opened the mail everyday, so he would have been the person to see the subpoena first (Transcript of July 10, 1995 *en banc* hearing, p. 38). We know that the subpoena arrived at the office because Ms.

---

7. Attorney Morgan claimed that Mr. VandeWetering's testimony constituted improper character evidence. The Court disagreed, finding that the testimony would go towards Mr. Morgan's motive, opportunity, or intent in forging the Ludwick and VandeWetering signatures. See FED. R.EVID. 404(b). Judge Gregg further pointed out, and Judge Howard and Judge Stevenson agreed, that FED.R.EVID. 608(b) permits the Court, in its discretion, to admit evidence involving acts which relate to a witness's character for truthfulness.

Howell–Bell found the envelope in which it was sent.[8]

What the Court does not know however, is when Attorney Morgan intercepted Ms. Howell–Bell's subpoena. She testified that she found the opened envelope in the trash on either May 17 or 18 (Transcript of July 10, 1995 *en banc* hearing, p. 53); Ms. Roys testified that she mailed the subpoena on May 11 (Transcript of July 10, 1995 *en banc* hearing, p. 70); and the envelope was postmarked May 11 and 12 (Exhibit 9). The Court believes that Attorney Morgan probably did intercept the subpoena before the May *en banc* hearing and is therefore guilty of obstructing justice. However, because of the possibility, albeit improbable, that Attorney Morgan did not intercept Ms. Howell–Bell's subpoena until after the May *en banc* hearing, we are unable to make a definitive finding on this issue.

The evidence produced at the July *en banc* hearing destroyed any remaining credibility Attorney Morgan may have had. We find that he forged Debtor VandeWetering's signature on his motion to convert and then lied to the Court about doing so; that he lied at the May *en banc* hearing about the whereabouts of Ms. Howell–Bell and her knowledge of these proceedings; and that he very probably obstructed justice by interfering with Ms. Howell–Bell's subpoena to appear at the May *en banc* hearing.[9]

## VI. Attorney's Fees

■ Based on his woefully inadequate and perilous representation of Debtor Ludwick, Attorney Morgan shall reimburse him all those attorney's fees which Debtor Ludwick paid him regarding this case. 11 U.S.C. § 329(b)(2). Debtor Ludwick testified that

that amount is $710 (Transcript of March 27, 1995 hearing, p. 41).

## VII. Sanctions

### A. Rule 9011 Sanctions

■ Attorney Morgan violated FED. R.BANKR.P. 9011 when he forged Ludwick's name to his bankruptcy petition. In relevant part, Rule 9011 provides:

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name ... A party who is not represented by an attorney shall sign all papers ... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact ... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Due to his violation of this Rule, the Court will impose monetary sanctions to compensate Debtor Ludwick for the difficulties caused by Attorney Morgan's actions. After learning of Attorney Morgan's duplicity, Debtor Ludwick hired Matthew P. Smith, Esq. to defend the Trustee's motion to show

---

8. We conclude that the envelope found by Ms. Howell–Bell contained the subpoena from the U.S. Trustee because Janice Roys, a paralegal with the U.S. Trustee's office, testified that she remembered typing and then sending the subpoena and envelope to Ms. Howell–Bell. Ms. Roys further testified that it was the only document she ever sent to her (Transcript of July 10, 1995 *en banc* hearing, pp. 69–70). The only other paralegal at the U.S. Trustee's office in Grand Rapids, Joan Waldmiller, also prepares subpoenas. She testified that she has never served Ms. Howell–Bell with a subpoena or any other legal document at the address of Attorney Morgan's

office (Transcript of July 10, 1995 *en banc* hearing, p. 67). Therefore, the empty envelope discovered in the trash by Ms. Howell–Bell had contained the subpoena.

9. Our earlier finding that Ms. Howell–Bell did not receive proper service on her subpoena does not excuse Attorney Morgan's interception of that document. Regardless of proper service, Ms. Howell–Bell testified that she would have appeared and testified as requested if she had had knowledge of the May *en banc* hearing.

cause and to represent him in the Chapter 7. This cost Mr. Ludwick an additional $2,210.00 in legal fees. Attorney Morgan shall reimburse this money to Debtor Ludwick.

Attorney Morgan shall also reimburse Chapter 7 Trustee John Porter his costs and fees incurred in bringing Morgan's deception to the attention of the Court. An itemized statement submitted by Trustee Porter on March 28, 1995 established this amount at $236.78.

In assessing monetary sanctions, the Court has considered Attorney Morgan's ability to pay. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor, et. al.,* 875 F.2d 1224 (6th Cir.1989). Given the 133 bankruptcy cases he has filed to date in this Court alone, we believe that imposition of the above sanctions will not impose any undue hardship.[10] Moreover, at the July *en banc* hearing, Attorney Morgan volunteered to pay these costs (Transcript of July 10, 1995 *en banc* hearing, p. 80). Having made this offer on the record, the Court finds that the requirements of *Jackson* are met.[11]

### B. Suspension and other penalties

Even more troublesome than Attorney Morgan forging the signatures of his clients is the fact that he repeatedly lied to the U.S. Trustee and this Court about doing so. It was this dishonesty that prompted the Court to consider the uncommon remedy of suspending Attorney Morgan from practicing before this Court. According to L.BANKR.R. 13 (W.D.Mich.), such a dramatic measure can only be taken by the Court sitting *en banc.* In relevant part, Rule 13 provides:

(d) *Disbarment, Suspension, Reprimand or Discipline.*

(1) *After Hearing*—Any member of the bar of this Court may, for good cause

shown and after notice and an opportunity has been give to the member to be heard, be barred or suspended from practice in this Court for such period of time as the Court shall specify, or shall be reprimanded or subjected to such other discipline as the Court may deem proper. Such actions may only be taken by a majority vote of the judges of this Court *en banc.*[12]

To the Court's knowledge, no attorney has ever been suspended from practicing before it. Ample authority exists, however, to impose this sanction.

The bankruptcy court is a court of equity. The clear language of 11 U.S.C. § 105(a) grants this Court significant equitable powers as well as latitude in framing the relief necessary to carry out both the specific provisions of the statute as well as its philosophical underpinnings.

In *D.H. Overmyer Co., Inc. v. Robson,* 750 F.2d 31 (6th Cir.1984), the Sixth Circuit affirmed the revocation of an attorney's *pro hoc vice* status when the attorney failed to comply with a bankruptcy court rule requiring the disclosure of conflicts of interest. Affirming the district court's affirmance of the bankruptcy court's decision, the Sixth Circuit held that a bankruptcy court has broad discretion to determine whether an attorney should be disciplined by suspending his right to practice before it. *Id.* at 33–34. The Court followed a balancing test first employed in *Ex Parte Burr,* 22 U.S. (9 Wheat) 529, 6 L.Ed. 152 (1824):

On the one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that

---

10. This Court may take judicial notice of its own court records. See discussion of FED.R.EVID. 201 in footnote 3, *supra.*

11. Should he now wish to retract his offer, Attorney Morgan shall file and serve an appropriate pleading on or before September 1, 1995.

12. This rule closely resembles W.D.MICH.L.R. 21. No explicit authority exists for a bankruptcy

court to sit *en banc.* C.f. 28 U.S.C. § 46(c); FED.R.APP.P. 35 (giving federal appellate courts the authority to sit *en banc*). However, bankruptcy judges in a given district may promulgate rules to divide cases and business as they deem appropriate. 28 U.S.C. § 154(a). We believe this statute also gives us the authority to sit *en banc.*

its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court.

*D.H. Overmyer Co., Inc. v. Robson,* 750 F.2d at 33 quoting 22 U.S. (9 Wheat) at 529.

The *Burr* opinion further cautioned that a reviewing court should not interpose its authority to overturn a lower court's decision to discipline an attorney absent a showing that the conduct of the court below "was irregular, or was flagrantly improper." 22 U.S. (9 Wheat) at 531.

More recently, the Supreme Court has again ruled on the power of the federal courts to control parties practicing before them. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) held that federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. *Chambers v. NASCO, Inc.,* 501 U.S. at 43–44, 111 S.Ct. at 2132. In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees. *Id.*

In *Overmyer* the attorney was only suspended from practicing before the court in a specific case. A case more analogous to the instant situation is *In re Nesom,* 76 B.R. 101 (Bankr.N.D.Tex.1987). In *Nesom,* the court conducted a show cause hearing to determine why the debtors' signature on the statement of affairs, schedules, and schedule of current income and expenditures was signed in handwriting different than the signature on the original petition and why the name was spelled differently. The debtors' attorney appeared and admitted on the record to having signed his client's name to the statement of affairs and schedules. The attorney provided no explanation or excuse for his behavior.

The *Nesom* court concluded that the debtors' attorney had violated federal law by forging his client's name. Specifically, because the debtors did not sign and swear to the information required of a debtor under the Bankruptcy Code, 11 U.S.C. § 521, the attorney may have subjected his clients to loss or revocation of discharge without their realization and without their affidavits. Finding that the attorney had violated Fed. R.Bankr.P. 9011 and impeded and disrupted the bankruptcy process, the court sanctioned the attorney pursuant to its inherent powers, 11 U.S.C. § 105, by prohibiting him from practicing in the Bankruptcy Court for the Northern District of Texas for 60 days. A copy of its opinion was also sent to the Texas State Bar Committee appropriate for investigating such matters.

Unlike the *Nesom* attorney who immediately admitted to the forgery, Attorney Morgan's actions are considerably more egregious. He repeatedly attempted to mislead the United States Trustee and this Court as to the true origin of the signature on the Ludwick petition, even going as far as lying about the whereabouts of his paralegal and intercepting her subpoena. In doing so, Attorney Morgan subjected Debtor Ludwick to loss or revocation of discharge, squandered his client's time and money, violated Rule 9011, and wasted the limited time and resources of this Court.

In determining the appropriate sanction, Attorney Morgan urged the Court to consider the actual harm caused Debtors Ludwick and VandeWetering by having their names forged to their respective bankruptcy pleadings. We acknowledge that both Debtors ultimately, but belatedly, achieved what they were seeking from Attorney Morgan's representation—Debtor Ludwick's petition was filed and Debtor VandeWetering's case was converted. The Bankruptcy Code and Rules require that debtors be honest and fair with the Court and make full and accurate disclosures in all official documents. This Court and the Code require at least as much, if not more, from attorneys. Attorney Morgan has fallen perilously short of this requirement. The rules of bankruptcy and civil procedure exist for a reason. Attorney Morgan, like every other attorney in this district, is required to follow them in seeking relief for his clients. His conduct has been an affront to the integrity of the bankruptcy process. We believe that process has a significance far

more important than merely achieving the results sought by a client.

As Attorney Morgan so ably pointed out in his closing argument at the July *en banc* hearing, the ramifications of this matter reach far beyond the two forgeries (Transcript of July *en banc* hearing, pp. 80–81). We cannot help but strongly agree.

Relying on the latitude given us by the Sixth Circuit and the United States Supreme Court to regulate which attorneys may practice before it, and considering the severity of his misconduct, we hereby order the following:

1. On or before September 1, 1995, Andrew D. Morgan shall, pursuant to 11 U.S.C. § 329(b)(2), reimburse Debtor Ludwick the amount of $710.

2. Absent the timely filing of a request for a *Jackson* hearing, on or before September 8, 1995 Andrew D. Morgan shall pay the amount of $236.78 to Trustee John Porter, and an additional $2,210.00 to Debtor Ludwick.

3. Andrew D. Morgan is hereby prohibited from practicing law in the United States Bankruptcy Court for the Western District of Michigan for a period of two years from the date of this opinion and order. Attorney Morgan shall not file any pleading or appear on behalf of any client before said court during this period.

4. A copy of this opinion shall be forwarded to the Office of the United States Attorney for the Western District of Michigan to determine if further action should be taken.

5. A copy of this opinion shall also be forwarded to the Michigan Attorney Grievance Commission so it may consider possible additional disciplinary action against Andrew D. Morgan.

6. The Court hereby retains jurisdiction to enforce the sanctions imposed. To the extent necessary, in the event of future noncompliance by Andrew D. Morgan, this Court may take other appropriate action.

IT IS SO ORDERED.