### In re Randall Joseph HAKE and Mary Ann Hake, Debtors.

### No. 04–41352.

United States Bankruptcy Court, N.D. Ohio.

May 6, 2008.

Randall Joseph Hake, pro se.

Mary Ann Hake, pro se.

## MEMORANDUM OPINION REGARDING (I) ORDER TO SHOW CAUSE CONCERNING REVOCATION OF PRO HAC VICE ADMISSION OF F. DEAN ARMSTRONG AND (II) MOTION TO WITHDRAW SHOW CAUSE ORDER AS MOOT AND ALTERNATIVE MOTION TO RECUSE

KAY WOODS, Bankruptcy Judge.

On November 2, 2005, Victor Buente ("Mr. Buente"), on behalf of Buckeye Retirement Co., L.L.C., Ltd. ("Buckeye"), filed Motion for Admission of F. Dean Armstrong Pro Hac Vice and Notice ("Motion"). On November 16, 2005, this Court granted the Motion and entered Order on Motion for Admission Pro Hac Vice of F. Dean Armstrong ("Admission Order"). On April 10, 2008, this Court entered Order to Appear and Show Cause Why Admission Pro Hac Vice of F. Dean Arm-

strong Should Not Be Revoked ("Show Cause Order"). On April 23, 2008, Buckeye and its lead counsel, F. Dean Armstrong ("Mr. Armstrong") filed Motion to Withdraw Show Cause Order as Moot and Alternative Motion to Recuse ("Motion to Withdraw/Recuse").

## I. SHOW CAUSE HEARING

The Court held a hearing on the Show Cause Order on April 29, 2008 ("Hearing"), at which Mr. Armstrong appeared. Mr. Buente appeared as counsel for Mr. Armstrong.

The sole issue before the Court was whether Mr. Armstrong's pro hac vice status should be revoked. The Court expressly stated that it was not seeking to hold Mr. Armstrong in contempt. In addition to the matters set forth in the Show Cause Order, this Court noted that Mr. Armstrong had flagrantly violated this Court's October 26, 2007, pre-trial order concerning exclusion of Mary Ann Hake as a witness at the Discharge Adversary Proceeding ("Exclusion Order").

Mr. Armstrong argued that the Court's Show Cause Order was moot because he stipulated that his pro hac vice application was voluntarily withdrawn. As set forth at the Hearing (and below), the Court rejects this argument as without merit.

Mr. Armstrong took the witness stand and answered questions propounded by Mr. Buente. Mr. Armstrong's defense to the Show Cause Order consisted primarily of stating that: (i) he respected this Court and all courts, and (ii) he never intended to be disrespectful, obstreperous, or to delay any proceeding. He also stated that he never violated or intended to violate an order of this Court.

In answer to whether he had ever argued with this Court, Mr. Armstrong stated that he only engaged in zealous advocacy. Mr. Armstrong stated that: (i) he and the Court had a difference of opinion as to where the advocacy line should be drawn, and (ii) the differences between the Court and him were because of the way in which he advocated for his client. In Mr. Armstrong's opinion, he was never disrespectful to the Court, but only engaged in spirited discussions with the Court.

Mr. Armstrong admitted that he had rolled his eyes at the Court, but asserted that such conduct had been a "reflexive" action. He further stated that he had apologized to the Court for that action. Mr. Armstrong stated that he had never intended to be disruptive in Court and that he had only once "leaned over from counsel table" to try to get the attention of John O'Keefe ("Mr. O'Keefe"), co-counsel for Buckeye, when Mr. O'Keefe was making an offer of proof regarding Mrs. Hake's testimony.

Maintaining that he not only never intended to violate an order of this Court, Mr. Armstrong argued that, in fact, he did not violate this Court's Exclusion Order. Mr. Armstrong stated that he did not learn of the Exclusion Order until two days before trial began and that steps had already been set in motion to serve a subpoena on Mrs. Hake prior to issuance of the Exclusion Order. According to Mr. Armstrong, he informed Buckeye on the first day of trial about the Exclusion Order, but his client had already contacted a member of the U.S. Marshall's Service to serve Mrs. Hake with a subpoena. Mr. Armstrong maintained that he did not violate the Court's Exclusion Order because: (i) no subpoena was ever served on Mrs. Hake, and (ii) the Court's Order did not prohibit the issuance of a subpoena on Mrs. Hake. While maintaining that the issue was academic because no subpoena was ever issued, Mr. Armstrong argued that he reasonably interpreted the Court's

Exclusion Order as permitting Buckeye to subpoena Mrs. Hake to testify about issues that did not implicate the spousal communication privilege.

As the Court pointed out at the Hearing, Mr. Armstrong's self-serving testimony did not comport with what actually occurred and constituted a significantly revised version of the facts.

## II. MOTION TO WITHDRAW SHOW CAUSE ORDER AS MOOT AND ALTERNATIVE MOTION TO RECUSE

■ The essence of the Motion to Withdraw/Recuse is that: (i) Buckeye hired Mr. Armstrong for the primary purpose of trying the adversary proceeding in which Buckeye sought denial of the discharge ("Discharge Adversary Proceeding") of Debtors Randall J. Hake and Mary Ann Hake (collectively, "Debtors");[1] (ii) since the Discharge Adversary Proceeding is now complete and Debtors have been denied discharge, "there is no need for Mr. Armstrong to maintain his pro hac vice status in either the main bankruptcy case or the Discharge Adversary Proceeding"; (iii) Buckeye will have other counsel, Mr. O'Keefe and Mr. Buente, handle "all remaining matters in the Hake bankruptcy"; and (iv) Buckeye and Mr. Armstrong stipulate to the withdrawal of Mr. Armstrong's pro hac vice status in both the main bankruptcy case and the Discharge Adversary Proceeding. These facts and arguments, however, do not render the Show Cause Order moot.

On February 4, 2008, Elm Road Development Co. and other plaintiffs filed an adversary proceeding against Mark Gleason, Chapter 7 Trustee ("Trustee"), and other defendants, including Buckeye (Adv. Pro. No. 08–4020) ("Elm Road Adversary Proceeding"). On March 24, 2008, Trustee and Buckeye filed Joint Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), which was signed on behalf of Buckeye by Mr. O'Keefe, Mr. Buente, and Mr. Armstrong.[2] On April 3, 2008, Trustee and Buckeye filed Reply to Plaintiff's [ sic] Response to Joint Brief in Support of Joint Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6),

1. This argument is, at best, disingenuous, since Buckeye moved for Mr. Armstrong's pro hac vice admission in November 2005, but the Discharge Adversary Proceeding was not filed until ten months later, on August 21, 2006. Mr. Armstrong served as Buckeye's "lead counsel" in all or nearly all matters after his pro hac vice admission, which, based on the docket, included filing at least 50 pleadings and making at least 12 appearances before this Court. In support of his argument, Mr. Armstrong contended that Buckeye had engaged Mr. O'Keefe to handle most of the matters in the main bankruptcy case because of Mr. Armstrong's lack of bankruptcy expertise. This contention is but one example of Mr. Armstrong's revisionist history. Buckeye sought the admission pro hac vice of Mr. O'Keefe by motion dated May 15, 2007 (following conversion of Debtors' chapter 11 case to chapter 7). The Court held a hearing on that motion on June 8, 2007, at which time, Mr. O'Keefe represented to the Court, "Our admission is sought *strictly with regard to the claim objecting to discharge. . . .*" (Emphasis added.) It was the Court's understanding that Mr. O'Keefe would be lead counsel in the Discharge Adversary Proceeding, which did not turn out to be the case. The record of Debtors' main bankruptcy case and the Discharge Adversary Proceeding reflect that Mr. Armstrong took the lead and served as Buckeye's lead counsel in both matters after entry of the Admission Order.

2. Mr. O'Keefe, who was also at the Hearing, stated that he was responsible for putting Mr. Armstrong's name on the Elm Road Adversary Proceeding pleading as co-counsel. Mr. Armstrong stated that Buckeye had not hired him to defend the Elm Road Adversary Proceeding. Nevertheless, Mr. Armstrong's name appears on at least two pleadings filed on behalf of Buckeye in the Elm Road Adversary Proceeding, and no action has been taken to correct the alleged error of his signature on such pleadings.

which was also signed on behalf of Buckeye by Messrs O'Keefe, Buente, and Armstrong. The Motion to Withdraw/Recuse makes no mention of Mr. Armstrong's withdrawal of admission pro hac vice in the Elm Road Adversary Proceeding. Indeed, the Motion states that Buckeye and Mr. Armstrong "stipulate and agree to the withdrawal of Mr. Armstrong's pro hac vice status for both the main bankruptcy case and the Discharge Adversary Proceeding" *only*. The Motion is conspicuously silent about the Elm Road Adversary Proceeding.

At the Hearing, Mr. Armstrong stated that his willingness to "withdraw" his pro hac vice status covered all proceedings in Debtors' bankruptcy case, including the Elm Road Adversary Proceeding. As a consequence, Mr. Armstrong argued that such "withdrawal" mooted the Court's Show Cause Order. This argument, however, fails because Mr. Armstrong's pro hac vice admission is based solely upon this Court's Admission Order. Mr. Armstrong cannot "stipulate" or "withdraw" the Court's order out of existence. The Admission Order continues to stand unless this Court vacates the Order or revokes Mr. Armstrong's pro hac vice status. Mr. Armstrong further stated that he did not intend to make any further appearances in this Court on any matter regarding Debtors' bankruptcy case, including the Elm Road Adversary Proceeding. Mr. Armstrong's intent, however, is irrelevant so long as his continued pro hac vice admission authorizes him to further participate in Debtors' case.

As a consequence, the Court finds that the issue of the status of Mr. Armstrong's pro hac vice admission is not moot, and thus, there is no reason to vacate the Court's Show Cause Order.

■ Buckeye and Mr. Armstrong alternatively argue that recusal is required because "a reasonable third party would reasonably believe that Judge Woods was and is prejudiced against Buckeye and its lead counsel, Mr. Armstrong, and that Mr. Armstrong cannot get a fair trial before Judge Woods on the issues asserted by Judge Woods" in the Show Cause Order. (Mot. to Withdraw/Recuse at 1.) Buckeye offers no basis for its statement that a reasonable person would believe that the Court is prejudiced against Buckeye and Mr. Armstrong and that Mr. Armstrong cannot get a fair trial.[3] Indeed, Buckeye acknowledges that Mr. Armstrong was its lead counsel in the Discharge Adversary Proceeding and that Buckeye prevailed therein. (Mot. to Withdraw/Recuse, ¶¶ 2, 3, and 4.) To the extent Buckeye may have issues or quarrels with any of the Court's rulings prior to entry of judgment in the Discharge Adversary Proceeding, none of those rulings adversely impacted Buckeye and/or its ability to present its case.

The only basis for Buckeye's current argument for recusal is found in Buckeye's prior motion to recuse ("First Motion to Recuse"), which Buckeye incorporated by reference into the Motion to Withdraw/Recuse. The First Motion to Recuse was filed November 15, 2005—one day before Mr. Armstrong was admitted pro hac vice before this Court—and dealt with this Court's alleged bias against Buckeye and Mr. Buente (rather than Mr. Armstrong, as currently argued). The First Motion to Recuse was based entirely on Buckeye's perception that: (i) "Judge Woods glares and scowls at Mr. Buente, has a sarcastic

---

**3.** As set forth, *infra,* the District Court has previously rejected Buckeye's argument that this Court is biased against Buckeye. The District Court has considered Buckeye's contention from the perspective of a "reasonable person" and found the argument to be baseless.

tone to her voice when discussing Mr. Buente's arguments on behalf of Buckeye, and generally has a hostile and negative attitude toward Mr. Buente and his client, Buckeye." (First Mot. to Recuse at 6.) This alleged conduct led Mr. Buente to the "firm and distinct perception that Judge Woods is prejudiced against Buckeye and has made a predetermination to do whatever she can to rule against Buckeye." (*Id.*) Mr. Buente's and Buckeye's "firm and distinct perception" that the Court was prejudiced and would "do whatever [it] could to rule against Buckeye" has clearly been shown to be a mis-perception since Buckeye prevailed in the Discharge Adversary Proceeding. Accordingly, no reasonable person would believe that this Court cannot provide Buckeye and/or Mr. Armstrong with a fair and impartial hearing.

Moreover, the United States District Court found Buckeye's argument concerning prejudice and bias on the part of this Court to be groundless. On October 20, 2006 (approximately one year after Buckeye made its first argument for recusal), Buckeye filed Plaintiff's Motion to Withdraw the Reference ("Reference Motion") in the Discharge Adversary Proceeding. In its memorandum in support of the Reference Motion, Buckeye argued that it had a "reasonable basis to believe, and a reasonable third person would so reasonably believe, that (1) Judge Woods is prejudiced against [Buckeye]; (2) Judge Woods has become an advocate for [Debtors]; and (3) Judge Woods has made a predetermination that [Debtors] will obtain a discharge from the payment of their lawful debts." (Ref. Mot. at 2.) On April 27, 2007, the District Court entered Memorandum Opinion and Order ("District Court Order"), which denied the Reference Motion and addressed Buckeye's contention that "the bankruptcy judge is prejudiced against Buckeye, and, therefore, the judge cannot fairly preside over the trial." (Dist. Ct.

Order at 5.) The District Court held, "[t]here is nothing in the bankruptcy court's Order or the record that gives this Court pause. To the contrary, the bankruptcy judge has been exceedingly thorough, even issuing lengthy written orders on procedural issues. Furthermore, the bankruptcy judge's decision to impose sanctions against Buckeye was upheld by the BAP." (Dist. Ct. Order at 8–9.)

The totality of the circumstances of this case demonstrate that this Court has been fair and impartial in dealing with Debtors, Trustee, and Buckeye and that any objective third party would reasonably find so. The standard for recusal under 28 U.S.C. § 455(a) is "whether a reasonable person would be convinced that the judge was biased." *Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir.2000). The District Court has previously fully reviewed, considered, and rejected Buckeye's contention that a reasonable person would believe this Court was prejudiced and incapable of providing a fair and impartial hearing to Buckeye. This Court finds that Buckeye has presented no new or additional reason that would justify recusal by this Court.

For the foregoing reasons, the Motion to Withdraw/Recuse is not well taken and will be denied.

### III.  MR. ARMSTRONG'S PRO HAC VICE STATUS

■ As set forth in the Show Cause Order, this Court has the inherent power to control or eliminate disruptive, abusive, or unprofessional practice or conduct. (Loc. Bankr. R. (N.D. Ohio) 2090–2(c).) Mr. Armstrong is an officer of the Court and has an obligation to be courteous and respectful to the Court at all times. He has clearly failed in this regard. Mr. Armstrong testified that he has approximately

thirty (30) years of litigation experience, so he should be well versed on the conduct expected of him in court and the interpretation of court orders.

This Court detailed in Part G of its Memorandum Opinion Regarding Consolidated Trial on Complaints Seeking Denial of Discharge ("Discharge Adversary Proceeding Opinion"), entered on March 21, 2008, the unprofessional and disrespectful conduct of Mr. Armstrong before the Court during the trial of the Discharge Adversary Proceeding, which was not the first time Mr. Armstrong had exhibited argumentative, disrespectful, and antagonistic behavior toward the Court.

The record belies the story that Mr. Armstrong told at the Hearing. Despite saying that he respects the Court, Mr. Armstrong has consistently shown disrespect to the Court. Mr. Armstrong was disruptive on several occasions; the most notable incident occurred on the fourth day of the Discharge Adversary Proceeding trial. In referring to this incident, Mr. Armstrong insists that he merely leaned over from counsel table to impart crucial information to Mr. O'Keefe at the lectern; however, Mr. Armstrong's version at the Hearing is at odds with what actually occurred. On the fourth day of trial, while Mr. O'Keefe was at the lectern providing a proffer of testimony, Mr. Armstrong disrupted the Court by standing next to Mr. O'Keefe and whispering into his ear. The Court had to interrupt Mr. O'Keefe and tell Mr. Armstrong to take his seat. At that time, the Court stated:

> Wait. Just a—just a minute. Mr. Armstrong, you were told you could continue to participate as a spectator only. I would not permit a spectator to come to the—to the lectern and talk to any of the attorneys who are speaking. You must remain seated.

(Adv. Proc. Tr. at 867.) Mr. Armstrong violated the Court's directive that he could remain in the courtroom as a spectator only and clearly disrupted the proceedings. His characterization of that event is not accurate.

Despite acknowledging that he is a well-seasoned litigator, Mr. Armstrong would have this Court believe that he reasonably interpreted the Exclusion Order to permit Buckeye to subpoena Mrs. Hake. This suggestion is beyond comprehension. According to Mr. Armstrong, he did not violate the Exclusion Order because it did not prohibit Mrs. Hake from being subpoenaed, and, moreover, Mrs. Hake was not subpoenaed. Although it is true that no subpoena was issued to Mrs. Hake, such failure occurred only because this Court stopped the attempt.

A reading of the Exclusion Order readily shows that Mr. Armstrong's interpretation was not reasonable and that he did, indeed, deliberately violate this Court's Order. The Exclusion Order granted Debtors' motion in limine, which sought an order *"prohibiting the Plaintiffs from compelling Mary Ann Hake to testify* as a witness in the trial of this matter." (Debtor's Mot. in Limine at 1 (emphasis added).) Although it is true that neither the Motion in Limine nor the Exclusion Order contain the word "subpoena," it is clear that a prohibition on compelling a witness to testify encompasses the prohibition of issuing a subpoena. The Court held, as follows:

> As set forth above, because Mrs. Hake is no longer able to receive a discharge, there is no need for Plaintiffs to attempt to establish that her conduct violated 11 U.S.C. § 727. Plaintiffs have already received all of the relief they can obtain with respect to Mrs. Hake. Debtors anticipate that Buckeye might attempt to call Mrs. Hake for the purpose of contesting the discharge of Mr. Hake.

Plaintiffs have acknowledged as much in their statement of the anticipated testimony of Mrs. Hake. To the extent such questioning would implicate confidential communications between Mr. and Mrs. Hake, such testimony is privileged....

As a consequence, *the Court grants the Motion in Limine* on the basis that any testimony by Mrs. Hake concerning the remaining defendant in this case, Randall J. Hake, would be privileged. *If and to the extent Plaintiffs can establish* that (i) testimony by Mrs. Hake is essential to their case objecting to the denial of Mr. Hake (i.e., such testimony would not be cumulative and is solely within the knowledge of Mrs. Hake); and (ii) such questions/testimony would not implicate confidential communications between husband and wife, *the Court will permit Plaintiffs to seek reconsideration of this Order.*

(Exclusion Order at 10–11 (emphasis added).)

The Court expressly granted Debtor's Motion in Limine to prohibit Buckeye from compelling Mrs. Hake to testify. It is beyond understanding how Mr. Armstrong could reasonably interpret the Exclusion Order to permit Buckeye to obtain a subpoena for Mrs. Hake's testimony.[4] As an experienced litigator, Mr. Armstrong had to understand that the Exclusion Order prohibited Buckeye from subpoenaing Mrs. Hake for any purpose. In addition, the Exclusion Order provided for Buckeye to seek reconsideration of the order under certain circumstances. Buckeye had the right to seek reconsideration if it needed Mrs. Hake's testimony for purposes that did not implicate the spousal communica-

tions privilege, but Buckeye was not free to try to compel Mrs. Hake to testify absent the Court's reconsideration and modification of the Exclusion Order.

Furthermore, Mr. Armstrong's testimony concerning the Exclusion Order at the Hearing is contradicted by his statements at the trial. After acknowledging that counsel for Buckeye became aware of the Exclusion Order on Saturday before trial began, the following exchange occurred on the first day of trial between the Court (CT) and Mr. Armstrong (ARM).

CT: ... Someone who identified himself as Adam from [Buckeye] contacted the United States Marshals Office this morning, days after I issued that order, wanting the Marshals' help in serving a subpoena upon Mrs. Hake for this action. Surely you know that that would be a violation of the Court's Order?

(No verbal response.)

CT: Oh, nobody's going to answer. Mr.—Mr. Armstrong, you put up your hand and you're stopping everyone from answering the question of the Court?

ARM: I'd like to answer it.

CT: You can—you may answer. You're up here, too.

\* \* \*

ARM: *I alone am responsible. I do not believe it to be a violation of the Court order to have a subpoena issued on Mrs. Hake.* The privilege, Your Honor, is a specific privilege—question, answer, question, answer. Of course, I can ask Mrs. Hake about knowledge

---

**4.** Black's Law Dictionary defines "subpoena" as "[a] writ commanding a person to appear before a court or other tribunal, subject to a penalty for failing to comply." BLACK'S LAW DICTIONARY 1467 (8th ed.2004). There can be no disagreement that compelling a person to testify is synonymous with "commanding a person to appear before court ..., subject to a penalty...."

other than discussions with her husband.

CT: This Court issued an order granting the motion in limine that *prohibited you from calling her.* Are you aware of that order?

\* \* \*

ARM: Yes, I am.

CT: And you are bound by that order, are you not?

ARM: *I respectfully disagree with that order* but, yes, Your Honor, *I respectfully disagree with it.*

CT: Whether or not you agree with it, you are bound by it and that means that there should be no subpoena issued upon Mrs. Hake.

ARM: The record will show, Your Honor, that we attempted to have Mrs. Hake subpoenaed prior to learning of the Court's order. The record would also show, and I represent to the Court, that after we found out about the Court's order, the efforts to subpoena Mr. [sic] Hake were instructed to stop.

CT: Well, they didn't because this person who identified himself as Adam contacted the United States Marshals Office this morning, which is certainly after issuance of the order. So to the extent that you're responsible for communications with your client, which you all certainly are, you were obligated to stop that effort and you failed to do so in violation of this Court's order. And I don't care if you agree or disagree with the order, you are bound by it. I spent my lunch hour talking to the United States Marshal's Office because of this conduct.

\* \* \*

ARM: We have instructed the process server to cease efforts to serve Mrs. Hake. *I am responsible for the efforts to get Mrs. Hake served.*

CT: Well, Mr. Armstrong, you did not do a good job in instructing your client to cease op—you know, those efforts, because those efforts were going on this morning in violation of my order. And I want you to know that as officers of the Court, you have an obligation to make sure that your clients don't violate a Court order.

ARM: Your Honor, *I do not believe that those efforts were in violation of the Court order. They have stopped so I suppose we can respectfully agree to disagree on that subject, because a privilege is asserted on a question and answer specific basis.* There is no basis for asserting the privilege as to matters that Mrs. Hake learned from her own eyes and her direct participation without getting into discussions with Mr. Hake.

(Discharge Adv. Proc. Tr. at 110–13 (emphasis added).)

From the discussion at trial, it is clear that Mr. Armstrong was aware of the Exclusion Order, which prohibited Buckeye from compelling Mrs. Hake to testify, yet he continued to maintain that Buckeye's attempt to cause a subpoena to issue for her attendance at trial did not violate the Exclusion Order. The focus of Mr. Armstrong's discussion with the Court at trial was his disagreement with the substance of the Court's Exclusion Order—*i.e.*, that the spousal privilege could only be asserted on a question by question basis. A review of the trial transcript demonstrates that Mr. Armstrong's testimony at the Hearing about not violating the Exclusion Order or intending to violate the Exclusion Order is self-serving and not credible.

Granting or revoking pro hac vice admission in within the discretion of the court. "In sum, the bankruptcy court is vested with the discretion to determine if *pro hac vice* status should be granted, or, as in this case, revoked." *D.H. Overmyer, Co. Inc., v. Robson*, 750 F.2d 31, 34 (6th Cir.1984).

There is no "right," however, of foreign counsel to be admitted *pro hac vice* or otherwise to practice in this district. "It is well settled that permission to a non-resident attorney, who has not been admitted to practice in a court, to appear pro hac vice is not a right but a privilege, the granting of which is a matter of grace resting in the sound discretion of the presiding judge." "The right to appear pro hac vice for an attorney not generally admitted to practice before a court is a privilege, not a right. There is no constitutional right either for an attorney to practice in a court to which he is not admitted generally, or for a litigant to be represented by such an attorney. The Court has the ability and obligation to refuse the privilege of pro hac vice practice of counsel who fail to meet . . . . standards."

*In re Ferguson*, 64 B.R. 553, 554–55 (Bankr.W.D.Mo.1986) (internal citations omitted).

Here, as set forth above, and in the Discharge Adversary Proceeding Opinion, the Court has more than ample justification for revoking the pro hac vice privilege of Mr. Armstrong. Mr. Armstrong's overall demeanor and conduct fail to meet the standards of conduct required by the courts in the Northern District of Ohio.

Applying discretion, the bankruptcy court in *In re Horn*, 285 B.R. 390 (Bankr. N.D.Ohio 2002), denied pro hac vice status to an attorney who failed to meet the standards of conduct expected of all attorneys who practice in this district.

The Court also considers whether the attorney has shown that he will meet the standards of conduct expected of all attorneys who practice in this district. Essentially, this conduct includes timely filing of documents, attendance at court hearings, effective communication with one's own client, advocacy based on a reasoned reading of the law, and a commitment to civility in the profession, evidenced in both written and verbal contacts with opposing counsel and the Court.

*Id.* at 392.

The Court notes that Mr. Armstrong's most egregious conduct involved the violation of this Court's Exclusion Order. As an officer of the Court, Mr. Armstrong has a solemn duty to abide by orders of the Court. Instead, in flagrant violation of the Court's order, Buckeye attempted to subpoena Mrs. Hake to testify at trial. Not only did Buckeye defy this Court's Order, Buckeye attempted to obtain the assistance of the U.S. Marshals to serve the subpoena on Mrs. Hake. Despite acknowledging awareness of the Court's order—issued three days earlier—Mr. Armstrong stated that he, alone among Buckeye's attorneys, was responsible for issuance of the subpoena. Mr. Armstrong argued, "I do not believe it to be a violation of the Court order to have a subpoena issued on Mrs. Hake." (Discharge Adv. Proc. Tr. at 111.) Mr. Armstrong insisted that, because he disagreed with the Court's order, Buckeye's attempts to serve Mrs. Hake with a subpoena were appropriate. (Discharge Adv. Proc. Tr. at 109–113.) Moreover, when the attempt to serve the subpoena was thwarted, Mr. Armstrong cavalierly stated, "I do not believe that those efforts [to serve Mrs. Hake with a subpoena] were in violation of the Court order. They have stopped so I suppose we can respectfully agree to disagree on that subject[.]" (Discharge Adv. Proc. Tr. at 113.)

When the Court asked for an explanation concerning the unlawful subpoena, Mr. Armstrong not only failed to apologize for his conduct, he steadfastly refused to acknowledge that issuance of the subpoena violated this Court's Exclusion Order—based solely upon his disagreement with the substance of the order. Whether or not an attorney agrees with a court's ruling, the attorney is bound to abide by such order unless or until it is vacated or overturned on appeal. Mr. Armstrong's conduct toward the Court in failing to acknowledge his violation of the Court's order and his insistence that he could do as he pleased despite the Court's order can not be tolerated. This conduct, alone, would warrant revocation of Mr. Armstrong's pro hac vice status.

Mr. Armstrong's conduct before this Court does not square with his testimony at the Hearing, which, as noted above, can only be described as self-serving. Mr. Armstrong's conduct before this Court, taken as a whole, warrants revocation of his admission pro hac vice. This Court has enumerated only a small number of the many episodes in which Mr. Armstrong engaged in disrespectful conduct that does not comport with the standards of conduct expected of all attorneys who practice in this district.

As a consequence, this Court will revoke the admission of F. Dean Armstrong pro hac vice for all purposes before this Court. An appropriate order will follow.

## ORDER (I) REVOKING PRO HAC VICE ADMISSION OF F. DEAN ARMSTRONG AND (II) DENYING MOTION TO WITHDRAW SHOW CAUSE ORDER AS MOOT AND ALTERNATIVE MOTION TO RE-CUSE

For the reasons set forth in this Court's Memorandum Opinion entered on this date, the Court (i) denies Motion to Withdraw Show Cause Order as Moot and Alternative Motion to Recuse (Doc. # 828); and (ii) revokes the admission of F. Dean Armstrong pro hac vice for all purposes before this Court.