ELECTRONIC CITATION:  2008 FED App. 0022P (6th Cir.)
File Name:  08b0022p.06

# BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT

In re:   RANDALL J. HAKE and          )
         MARY ANN HAKE,                )
                                       )         No. 08-8039
         Debtors.                      )
                                       )
_____      )

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division.
Bankruptcy Case No. 04-41352.

Submitted:  November 19, 2008

Decided and Filed:  December 22, 2008

Before:  FULTON, PARSONS, and STOSBERG, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON BRIEF:**  F. Dean Armstrong, Flossmoor, Illinois, Victor O. Buente, Jr., Newton Falls, Ohio, for Appellants.

_____

## OPINION

_____

DAVID T. STOSBERG, Bankruptcy Appellate Panel Judge.  Buckeye Retirement Co., L.L.C., Ltd. ("Buckeye") and its counsel, F. Dean Armstrong ("Armstrong"), appeal an order of the bankruptcy court denying their motion to withdraw the court's order to appear and show cause why the admission *pro hac vice* of Armstrong should not be revoked as moot, or in the alternative motion to recuse, and revoking the admission *pro hac vice* of Armstrong.  For the following reasons, the order of the bankruptcy court is AFFIRMED.

## I.  ISSUES ON APPEAL

Whether the bankruptcy court erred when it: (1) determined that its order to show cause why the admission *pro hac vice* of Armstrong should not be revoked was not moot; (2) refused to recuse itself; and (3) revoked the *pro hac vice* admission of Armstrong.

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and the Appellants have not timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1).  An order that disposes of discrete disputes within a larger case may be appealed immediately. *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir. 1996).  The bankruptcy court's order revoking Armstrong's *pro hac vice* admission is a final, appealable order. *Johnson v. Trueblood*, 629 F.2d 302, 303 (3d Cir. 1980).

The bankruptcy court's order denying the motion to withdraw the court's order to appear and show cause why Armstrong's *pro hac vice* admission should not be revoked as moot is a final appealable order reviewed de novo. *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007).  "Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007).  The bankruptcy court's denial of a recusal request is reviewed for abuse of discretion. *Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 418 (6th Cir. 2005).  Likewise, the bankruptcy court's decision to revoke an attorney's *pro hac vice* admission is reviewed for abuse of discretion. *D.H. Overmyer, Co., Inc. v. Robson*, 750 F.2d 31, 34 (6th Cir. 1984).  "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Volvo Commercial Fin. LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005) (citing *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 267 (B.A.P. 6th Cir. 2000)).  A court also abuses its discretion if, upon review, the appellate court is left with a "definite and firm conviction that the [bankruptcy court]

committed a clear error of judgment." *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.),* 227 F.3d 604, 607-08 (6th Cir. 2000) (quoting *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir. 1999)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Mayor and City Council of Baltimore, Md. v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002).

## III.   FACTS

On March 25, 2004, Randall J. Hake ("Mr. Hake") and Mary Ann Hake ("Mrs. Hake") (collectively "Debtors") filed a petition for relief under the Bankruptcy Code. On November 2, 2005, Buckeye filed a motion for admission of Armstrong *pro hac vice*. On November 16, 2005, the bankruptcy court granted the Motion and entered an Order on Motion for Admission Pro Hac Vice of F. Dean Armstrong (the "Admission Order").

On August 21, 2006, Buckeye filed an adversary proceeding objecting to the Debtors' discharge pursuant to 11 U.S.C. § 727 (the "Discharge Adversary Proceeding"). After Mrs. Hake failed to comply with a discovery order, the bankruptcy court entered an order on October 26, 2007, denying Mrs. Hake's discharge. Subsequently, the Debtors filed a motion *in limine* to prohibit Buckeye from compelling Mrs. Hake to testify as a witness in Mr. Hake's trial. The bankruptcy court granted the motion *in limine* on October 26, 2007. In pertinent part, the order read:

> Debtors anticipate that Buckeye might attempt to call Mrs. Hake for the purpose of contesting the discharge of Mr. Hake. Plaintiffs have acknowledged as much . . . . To the extent such questioning would implicate confidential communications between Mr. and Mrs. Hake, such testimony is privileged. . . .
>
>      As a consequence, the Court grants the Motion in Limine on the basis that any testimony by Mrs. Hake concerning the remaining defendant in this case, Randall J. Hake, would be privileged. If and to the extent Plaintiffs can establish that (i) testimony by Mrs. Hake is essential to their case objecting to the denial of Mr. Hake . . .; and (ii) such questions/testimony would not implicate confidential communications between husband and wife, the Court will permit Plaintiffs to seek reconsideration of this Order.

(App. at Tab 8, p. 11.)

Notwithstanding the pre-trial order, Armstrong instructed a Buckeye representative to contact the U.S. Marshal's office in order to have a trial subpoena served upon Mrs. Hake. On October 29, 2007, the first day of trial, the bankruptcy court learned of the attempt to subpoena Mrs. Hake through direct contact with the Marshal's office and instructed the Marshals not to serve the subpoena. When confronted by the bankruptcy court about the apparent pre-trial order violation, Armstrong contended he acted before the bankruptcy court's order was issued and, after learning of the order, took steps to inform Buckeye of the court's order. However, the Buckeye representative had already been in direct contact with the Marshal's office.

Armstrong also contended that the effort to serve Mrs. Hake with a subpoena did not violate the bankruptcy court's order granting the motion *in limine*. He then argued that because the subpoena would not be served, he and the court could "respectfully agree to disagree on that subject . . . ." (Appellant's Br. at 10.) Indeed, in his brief before this Panel, Armstrong continued to take the position that the order on the motion *in limine* did not prohibit Buckeye from attempting to serve a trial subpoena upon Mrs. Hake.

During the trial, Armstrong initially acted as lead attorney for Buckeye. However, after the bankruptcy court perceived him as being "disrespectful and obstreperous," the bankruptcy court ordered him to sit as an observer and directed his co-counsel to proceed with the trial. *Buckeye Ret. Co. v. Hake (In re Hake)*, 387 B.R. 490, 495 n.5 (Bankr. N.D. Ohio 2008). "Even after being told that he could participate as a spectator only, Mr. Armstrong was disruptive. The Court had to direct Mr. Armstrong to sit down again when he stood at the lectern whispering while other counsel representing Buckeye attempted to speak." *Id.* at 500.

On March 21, 2008, the bankruptcy court issued a lengthy memorandum opinion on the complaint seeking denial of Mr. Hake's discharge. Although the court dismissed several counts of the complaint, it ultimately denied Mr. Hake a discharge. Part G of that opinion sets forth the bankruptcy court's findings with respect to Armstrong's conduct during the trial. Specifically, the bankruptcy court found that Armstrong "was argumentative, disrespectful, and antagonistic toward the Court, including rolling his eyes and making faces while the Court was speaking and raising his voice." *Id.*

On April 10, 2008, the bankruptcy court issued an Order to Appear and Show Cause Why Admission Pro Hac Vice of F. Dean Armstrong Should Not Be Revoked (the "Show Cause Order"). The Show Cause Order directed Armstrong to appear at a hearing to be held on April 29, 2008, and show cause why his admission to appear *pro hac vice* should not be revoked and why he should not be held in contempt. On April 23, 2008, Buckeye and Armstrong filed a Motion to Withdraw Show Cause Order as Moot and Alternative Motion to Recuse ("Motion to Withdraw/Recuse"). This motion requested that the bankruptcy court withdraw the Show Cause Order as moot because Armstrong was voluntarily withdrawing his *pro hac vice* admission. Armstrong stated that he was hired for the primary purpose of trying the Discharge Adversary Proceeding, and that since that proceeding had concluded, he no longer needed to maintain his *pro hac vice* admission. Armstrong stipulated and agreed to withdraw his *pro hac vice* admission "for both the main case and the Discharge Adversary Proceeding." In the alternative, Buckeye and Armstrong requested that the bankruptcy judge recuse herself because "a reasonable third party would reasonably believe that [the bankruptcy judge] was and is prejudiced against Buckeye and its lead counsel, Mr. Armstrong, and that Mr. Armstrong cannot get a fair trial before [the bankruptcy judge] on the issues asserted by [the bankruptcy court] in [its] sua sponte Show Cause Order." Buckeye and Armstrong incorporated by reference a prior unsuccessful motion to recuse in support of their request.

The bankruptcy court held a hearing on the Show Cause Order on April 29, 2008, at which Armstrong appeared (the "Show Cause Hearing"). Victor Buente ("Buente") appeared as counsel for Armstrong. At that hearing, the bankruptcy court stated that the sole purpose of the hearing was to consider whether Armstrong's *pro hac vice* admission should be revoked. Despite the language used in the Show Cause Order, the bankruptcy court expressly stated that it was not seeking to hold Armstrong in contempt.

At the Show Cause Hearing, Armstrong argued that the Show Cause Order was moot due to the fact that he voluntarily agreed to withdraw his *pro hac vice* admission in the main bankruptcy case and the Discharge Adversary Proceeding. When the bankruptcy court pointed out that pleadings bearing Armstrong's name had also been filed in a separate adversary proceeding, the Elm Road Adversary Proceeding, Armstrong stated that it was his intention to voluntarily withdraw from all Hake bankruptcy matters, including the Elm Road Adversary Proceeding. To further elaborate, Armstrong stated "it is stipulated that my *pro hac vice* admission for the main bankruptcy case and

any related adversary proceedings would be withdrawn." (App. at Tab 1, pg. 8.) Armstrong presented nothing at the hearing with respect to the alternative relief requested.

With respect to the *pro hac vice* revocation issue, Armstrong, when questioned by Buente, testified that he respected the bankruptcy court, that he never intended to be disrespectful, obstreperous, or to delay the proceedings before the bankruptcy court. He further testified that he never intended to violate a court order, or to argue with the court. He attributed his attitude as simple "zealous advocacy." (App. at Tab 1, pg. 17.) He admitted rolling his eyes at the bankruptcy judge, but stated that he apologized and attributed the action as "reflexive." (App. at Tab 1, pg. 18.) Finally, Armstrong testified that he did not intentionally violate the court's order regarding Mrs. Hake's testimony and again argued that issuing a trial subpoena to Mrs. Hake did not violate any order.

On May 6, 2008, the bankruptcy court issued its Memorandum Opinion Regarding (I) Order To Show Cause Concerning Revocation of Pro Hac Vice Admission of F. Dean Armstrong and (II) Motion to Withdraw Show Cause Order as Moot and Alternative to Recuse and Order (I) Revoking Pro Hac Vice Admission of F. Dean Armstrong and (II) Denying Motion to Withdraw Show Order as Moot and Alternative Motion to Recuse. In that opinion, the bankruptcy court concluded that the Show Cause Order was not moot. According to the court, because Armstrong's *pro hac vice* admission was based solely upon the Admission Order, Armstrong could not "stipulate" or "withdraw" his admission. "The Admission Order continues to stand unless this Court vacates the Order or revokes Mr. Armstrong's *pro hac vice* status." *In re Hake*, 387 B.R. 514, 518 (Bankr. N.D. Ohio 2008). Despite the fact that Armstrong did not intend to further participate in any Hake bankruptcy matters, the Admission Order still authorized him to participate. Consequently, the bankruptcy court concluded the Show Cause Order was not moot.

The bankruptcy court denied the motion to recuse based, in part, on the District Court's rejection of the very same arguments raised by Buckeye's in its earlier motion to recuse. With respect to the contention that the bankruptcy judge was prejudiced against Buckeye and Armstrong, the bankruptcy court noted that Armstrong was lead counsel in the adversary proceeding seeking a denial of the Debtors' discharge, and that Buckeye had prevailed in that proceeding.

Finally, the bankruptcy court found that Armstrong engaged in argumentative, disrespectful, and antagonistic behavior toward the bankruptcy court – conduct which the bankruptcy court found failed to meet the standards of conduct required by the courts in the Northern District of Ohio. The bankruptcy court did not find Armstrong's explanatory testimony credible, calling it "self-serving" and a "revisionist history." Moreover, the bankruptcy court found that Armstrong intentionally violated its order regarding Mrs. Hake's testimony at trial by seeking to have Mrs. Hake subpoenaed. Based upon these transgressions, the bankruptcy court revoked Armstrong's *pro hac vice* admission.

## IV.   DISCUSSION

A.  Mootness

Federal courts lack jurisdiction to hear moot cases. Under Article III of the United States Constitution, they may only adjudicate actual, ongoing cases or controversies. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249 (1990).

> [F]ederal courts have 'no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue.' *NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001) (citing *Church of Scientology v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 121 L.Ed.2d 313 (1992)). 'Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)); *see also Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) ("Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief."). This court determined mootness 'by examining whether an actual controversy between the parties exists in light of intervening circumstances.' *Fleet Aerospace Corp. v. Holderman*, 848 F.2d 720, 723 (6th Cir. 1988).*Sicherman v. MBNA Am. Bank, N.A. (In re Sterba)*, 383 B.R. 47, 50 (B.A.P. 6th Cir. 2008) (quoting *Hood v. Keller*, 229 F. App'x 393 (6th Cir. 2007)). Generally, the issue of mootness is reviewed de novo. *In re DSC, Ltd.*, 486 F.3d 940 (6th Cir. 2007).

The Admission Order in this case granted Armstrong *pro hac vice* admission to participate as counsel for Buckeye. As stated above, Armstrong contends that because he voluntarily agreed to withdraw his *pro hac vice* admission, the hearing on the Show Cause Order was moot. The bankruptcy court held that the Admission Order continues to stand unless the bankruptcy court vacates the order or revokes Mr. Armstrong's *pro hac vice* admission.

-7-

This issue appears to be a case of first impression within the Sixth Circuit. The Eleventh Circuit addressed a similar situation in *Kirkland v. Nat'l Mortgage Network, Inc.*, 884 F.2d 1367 (11th Cir.1989), where an attorney argued that the revocation of *pro hac vice* admission was moot since the underlying case had been dismissed. The Eleventh Circuit disagreed and found the attorney disqualification matter a "live controversy." *Id.* at 1370 (citing *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985)). In *Kleiner*, the Eleventh Circuit held that the attorney disqualification issue was not moot despite the settlement of the underlying class action case. The Eleventh Circuit held that:

> The brand of disqualification was not lifted at the close of the proceedings. The disciplinary action and consequent disqualification may expose counsel to further sanctions by the bar and portends adverse effects upon counsel's careers and public image. The effects of disqualification will linger long after the closing of the case. The controversy thus remains live and demands consideration.

*Id.* at 1200 n. 14 (citations omitted). "Although the immediate impact of the revocation of his *pro hac vice* status ended with the case's dismissal, the 'brand of disqualification' on grounds of dishonesty and bad faith could well hang over his name and career for years to come." *Kirkland*, 884 F.2d at 1370. *Accord Brandt v. FDIC (In re Se. Banking Corp. Sec. and Loan Loss Reserves Litig.)*, 212 B.R. 386, 388 n.1 (S.D. Fla. 1997) (attorney's withdrawal from the action does not render the rescission of his *pro hac vice* admission moot).

The Panel adopts the reasoning of the Eleventh Circuit. Assuming *arguendo* Armstrong could voluntarily withdraw his *pro hac vice* admission, and that no motion and order was required, the "brand of disqualification" survived Armstrong's withdrawal from the Hake bankruptcy matters. Filing the Motion to Withdraw/Recuse did not moot the issues raised in the bankruptcy court's Show Cause Order, i.e., whether Armstrong had engaged in argumentative, disrespectful, and antagonistic conduct toward the bankruptcy court. Armstrong could not evade the bankruptcy court's valid exercise of its inherent authority to control its bar by simply filing a withdrawal of his *pro hac vice* admission on the eve of the Show Cause Hearing. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991) (federal court has the inherent power to control the admission to its bar and to discipline, suspend, or disbar out-of-state attorneys appearing *pro hac vice*).

B. Recusal

As alternative relief, Armstrong argues that the bankruptcy judge erred when she refused to recuse herself from adjudicating the Show Cause Hearing. In their Motion to Withdraw/Recuse, Buckeye and Armstrong alleged that recusal was required because "a reasonable third party would reasonably believe that [the bankruptcy court] was and is prejudiced against Buckeye and its lead counsel, Mr. Armstrong, and that Mr. Armstrong cannot get a fair trial before [the bankruptcy court] on the issues asserted by [the bankruptcy court] in [its] sua sponte Show Cause Order." The bankruptcy court disagreed, finding that Buckeye and Armstrong failed to provide any basis for their allegations of prejudice. Moreover, the bankruptcy judge noted that she had presided over the Discharge Adversary Proceeding in which Buckeye, with Armstrong as counsel, had prevailed. The bankruptcy court believed this alternative relief was simply a re-arguing of a previous motion to recuse, which had been denied and affirmed by the District Court.

A court's denial of a recusal motion is reviewed under an abuse of discretion standard. *Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003). The main federal recusal statute provides in relevant part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455(a)-(b).

As explained by the United States Supreme Court in *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147 (1994):

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves . . . they cannot possibly show reliance upon an extrajudicial source.... Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Id.* at 555 (internal citations omitted).

The Panel notes that the Appellants did not raise the issue of recusal at the Show Cause Hearing. Furthermore, this Panel concurs with the bankruptcy court that this issue was simply a re-argument of a previous motion for recusal that was denied by the District Court. Moreover, nothing in the record before this Panel indicates that the bankruptcy judge's opinion of Armstrong or Buckeye was derived from an extrajudicial source or that the judge possessed such a high degree of antagonism as to make fair judgment impossible. The fact that the bankruptcy court and Armstrong may have had some spirited exchanges hardly rises to the level of antagonism necessary to mandate recusal. Accordingly, the Panel finds the bankruptcy court did not abuse its discretion in denying the motion to recuse.

### C. *Pro Hac Vice* Admission Revocation

The bankruptcy court is vested with discretion to determine if an attorney's *pro hac vice* admission should be granted or revoked. *D.H. Overmyer Co. v. Robson*, 750 F.2d 31, 34 (6th Cir. 1984). Local Bankruptcy Rule 2090-1 of the Bankruptcy Court for the Northern District of Ohio provides that: "[a]ny member in good standing of the Bar of any court of the United States or of the highest court of any state *may*, upon written or oral motion, be permitted to appear and participate in a case or proceeding." (Emphasis added.) The language of this rule makes it clear that the decision to grant, or revoke, admission *pro hac vice* is vested in the sound discretion of the bankruptcy court. *See D.H. Overmyer Co.*, 750 F.2d at 33. As the Sixth Circuit Court of Appeals held in examining a similar district court local rule, this is the codification of the inherent authority of the courts to regulate the practice of law before them. *Id.*

Because the bankruptcy court is vested with this discretion, a reviewing court "should not interpose its authority to overturn a lower court's decision to discipline an attorney absent a showing that the conduct of the court below 'was irregular, or was flagrantly improper.'" *Id.* (quoting *Ex Parte Burr*, 22 U.S. 529, 531 (1824)). Where the judge's reason for revoking an attorney's *pro hac vice* admission is supported by the record, the court cannot be found to have abused its discretion. *Id.* at 34.

In its ruling, the bankruptcy court succinctly set forth the actions of Armstrong which gave rise to the Show Cause Order. The bankruptcy court found that Armstrong was unprofessional and

disrespectful and that he exhibited argumentative, disruptive, and antagonistic behavior toward the court. While it certainly is difficult to assess some of the bankruptcy court's findings for revoking the *pro hac vice* admission of Armstrong without a video recording of the proceedings, *i.e.*, that he used a disrespectful tone of voice toward the court, rolled his eyes at the court, raised his voice, or made faces while the court was speaking, the transcript does appear, overall, to support the bankruptcy court's findings with respect to Armstrong's conduct. Moreover, during the Show Cause Hearing, Armstrong acknowledged rolling his eyes at the bankruptcy court. Even without considering the violation of the pre-trial motion *in limine* order, these grounds alone would support the bankruptcy court's decision to revoke Armstrong's *pro hac vice* admission.

Armstrong's self-serving testimony lacks support from the record in this case. The bankruptcy court found his explanations not credible and a "revisionist history." This Panel agrees. Armstrong's antics far exceeded the standard of "zealous advocacy" as he contends and exhibited a deliberate disdain for the bankruptcy court. Such conduct cannot be tolerated, and the bankruptcy court acted appropriately in acting to preserve the dignity and decorum of the courtroom. Indeed, the Panel believes that the bankruptcy court exercised considerable restraint when dealing with Armstrong's unprofessional behavior and nothing in the record reveals an abuse of discretion. As the Sixth Circuit stated in *D.H. Overmyer Co.*, the "judge's reasoning for his decision is supported by the record and in accordance with well-settled legal principles. Therefore, it simply cannot be deemed an abuse of discretion." *D.H. Overmyer Co.*, 750 F.2d at 34.

## V.   CONCLUSION

The bankruptcy court did not err when it concluded that its Show Cause Order was not moot, notwithstanding Armstrong's Motion to Withdraw/Recuse. The bankruptcy court did not abuse its discretion in denying the motion to recuse. Nor did the bankruptcy court abuse its discretion in revoking Armstrong's *pro hac vice* admission. Accordingly, the bankruptcy court's order is AFFIRMED.